984 So.2d 1026 (2008)
George GOLDEN a/k/a George Lee Golden a/k/a George L. Golden, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00111-COA.
Court of Appeals of Mississippi.
February 5, 2008.
Rehearing Denied June 10, 2008.
*1027 Whitman D. Mounger, Greenwood, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. George Golden was convicted of fondling his seven-year-old daughter. The Washington County Circuit Court sentenced him to serve fifteen years in the custody of the Mississippi Department of Corrections. Golden's post-trial motions were denied. He appeals and raises the following six issues:
I. Whether the trial court erred in accepting the State's race and gender-neutral reasons for peremptorily striking five prospective jurors.
II. Whether the trial court erred by admitting the testimony of Jan Sample, clinical director, Family Crisis Services, and the videotape of her interview with the victim.
III. Whether the trial court erred by allowing Jan Sample to testify as to the veracity of the victim.
IV. Whether the trial court erred in denying Golden's motion for a new trial.
V. Whether the trial court erred in refusing to grant Golden's motion for a directed verdict, his request for a peremptory instruction, and his motion for judgment notwithstanding the verdict.

*1028 VI. Whether Mississippi Code Annotated section 97-5-23 (Rev.2006) comports with equal protection.[1]
¶ 2. We find no error and affirm.

FACTS
¶ 3. Sally often spent weekends with her father, Golden.[2] On the evening of November 14, 2003, Sally, then age seven, went to Golden's residence for an overnight visit. She testified that, while she was watching television in the bedroom, Golden pulled her pants and panties down and licked her vagina three or four times and, for no reason, just stopped. Sally testified that she wanted to call her mother to come and get her after this incident, but Golden took away all of the phones to prevent this. Shortly thereafter, Golden's brother, James, arrived at the residence, and Golden asked James to take Sally home. On the evening Sally returned to her mother's home, the only person she told of the fondling was her nine-year-old aunt. The following morning Sally told her great-grandmother about the incident. Her great-grandmother instructed Sally to go into the front of the house and tell her mother what had happened. She went into the front of the home and told her mother and grandmother what Golden did to her.
¶ 4. Sally's mother and grandmother briefly went over to Golden's residence to confront him. Golden denied fondling Sally. The mother and grandmother then returned home and called the Greenville Police Department to report the alleged incident. Sally repeated the story to the police and was then taken to the hospital for examination. No DNA or other evidence was recovered in the examination, possibly because during the time that the mother and grandmother went to confront Golden, Sally took a bath because she was anticipating a shopping trip to J.C. Penny's.
¶ 5. Following a hearing pursuant to Mississippi Rule of Evidence 803(25), the circuit court ruled that it would allow the testimony of Sally's mother, grandmother, and great-grandmother, as well as Daryl Saxton, a detective with the Greenville Police Department, and Jan Sample, clinical director of Family Crisis Services in Oxford, Mississippi, as well as the introduction of a video interview of Sally done by Sample. The circuit court ruled that all statements were admissible under Rule 803(25) as "they suppl[ied] the substantive indicia of reliability."
¶ 6. Sally's mother, grandmother, and great-grandmother all testified consistently with Sally in terms of what Sally told them. None of them testified that Sally seemed upset or behaved in any odd way after she returned from Golden's house.
¶ 7. Saxton testified that he spoke with Sally on the morning of November 15, 2003. Sally told him that, on the previous evening, she was at Golden's house. Sally explained that she was watching television in a back bedroom when Golden took her pants and panties off, spread her legs open and licked her vagina three or four times. Sally told Saxton that when Golden was through, she told him that she wanted to call her mother, but Golden hid all of the phones in order to prevent her from calling. Saxton stated that he had Sally transported to Delta Regional Medical Center for examination. He testified that Sally was calm, though her mother appeared emotionally upset. Saxton tried to *1029 talk to Golden several times, but he was not at home. Unable to contact Golden, Saxton had a warrant issued for his arrest. Golden was apprehended ten days later. After Saxton read Golden his rights, Golden signed a waiver and gave a voluntary statement in which he denied fondling Sally.
¶ 8. Golden denied fondling Sally. Golden's statement indicated that he and his girlfriend at the time, Shanta Pork, were at his house on the night in question. He stated that Sally was in a front room playing on the computer while he and Pork were watching television in a back room. According to Golden, Sally kept coming to the back to try and get him to come play with her on the computer. He told her no  that he wanted to watch television with his girlfriend. Sally got upset and said that she was going to call her mother and tell on him. Golden said he called Sally's grandmother to come get her, but she said that she could not drive after dark. Shortly thereafter, his brother, James, came by and took Sally home.
¶ 9. The last witness to be called by the State was Sample, the Clinical Director of Family Crisis Services in Oxford, Mississippi. Without objection, Sample was qualified as an expert in forensic interviewing by the circuit court. Sample interviewed Sally on July 23, 2004, for approximately twenty-eight minutes. After Sample discussed the methods and procedures employed during the interview, the State introduced the videotape of the interview and played it for the jury. Sample then testified that, based on "the consistency of report" and "[Sally's] whole demeanor," the details of Sally's interview were consistent with a child who has been sexually abused. Sample then testified, in a response to a question from the State, that she believed that Sally was telling the truth.
¶ 10. The defense called Pork, Golden's live-in girlfriend. Pork testified that she, Golden, and Sally were the only people in the house. She stated that Sally was in the front of the house playing on a computer, and she and Golden were in a back bedroom of the house. Pork testified that Sally came into the bedroom to get Golden to go to the front of the house with her, and that Golden went back and forth between the two rooms.
¶ 11. At the close of the evidence, the jury returned a verdict of guilty. Golden's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied. Aggrieved, Golden appeals.

DISCUSSION
I. Whether the trial court erred in accepting the State's race and gender-neutral reasons for peremptorily striking five prospective jurors.
¶ 12. Golden is an African American male. At the conclusion of voir dire, the State exercised five of the six peremptory strikes allocated to the State to strike males, four of which were African American.[3] The State did not exercise its sixth strike. Counsel for Golden then challenged the strikes pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), asserting that the strikes were based on gender and race. Before the trial judge made a ruling as to whether Golden had made a prima facie case as to discrimination, the State offered its race/gender-neutral reasons for exercising *1030 each respective strike. The trial judge found that the reasons offered by the State were race-neutral and/or gender neutral reasons to justify the strikes, and thus no Batson violation. Golden contends that the trial judge erred in so finding.
¶ 13. A peremptory strike may not be used to exclude a potential juror based on race as such a strike violates constitutional guarantees of equal protection. Id. at 76, 106 S.Ct. 1712. Peremptory strikes based on gender are likewise prohibited. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 143, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); Brawner v. State, 872 So.2d 1, 7-8 (¶¶ 21-22) (Miss.2004). We analyze a Batson challenge to a peremptory strike under a three-part test:
1. The party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory challenge.
2. If this initial showing is successful, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror.
3. The trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in the exercise of peremptory challenges.
Caston v. State, 823 So.2d 473, 498(88) (Miss.2002) (quoting Stewart v. State, 662 So.2d 552, 557 (Miss.1995)). "The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination." Flowers v. State, 947 So.2d 910, 917(9) (Miss.2007).
¶ 14. A trial court's findings under Batson are given great deference "because they are based largely on credibility." Id. at 917(8). The trial court will only be overruled on a Batson ruling where "the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." Id. (quoting Thorson v. State, 721 So.2d 590, 593(4) (Miss. 1998)).
¶ 15. In the instant case, the State offered explanations for its challenges; therefore, the issue of whether Golden established a prima facie showing of purposeful discrimination is immaterial. Burnett v. Fulton, 854 So.2d 1010, 1014(9) (Miss.2003). We also note that Golden completely failed to rebut the race/gender-neutral reasons offered by the State for the first four strikes. As to the fifth strike, Golden simply disagreed with the State's offered justification. Where, as here, the defendant fails to rebut the race/gender-neutral reasons given by the State, "the trial judge may base his decision only on the reasons given by the State." Coleman v. State, 697 So.2d 777, 786 (Miss.1997) (citing Bush v. State, 585 So.2d 1262, 1268 (Miss.1991)); see also Sudduth v. State, 562 So.2d 67, 71 (Miss. 1990) ("In the absence of an actual proffer of evidence by the defendant to rebut the State's neutral explanations, this Court may not reverse on this point.").
¶ 16. Therefore, we examine the reasons offered by the State as to each juror to determine whether the trial judge's finding that the State did not exercise purposeful discrimination was clearly erroneous.
Calvin Venson (S-1)
¶ 17. The reason offered by the State for striking Venson was that he was employed as a juvenile staff attendant in Washington County. Our supreme court has accepted "[e]mployment and factors related thereto" as race-neutral reasons for a peremptory challenge. Woodward v. State, 726 So.2d 524, 531(26) (Miss.1997) (citing Walker v. State, 671 So.2d 581, 628 *1031 (Miss.1995)). Because the State offered a valid neutral reason for the strike, we find no error in the trial judges ruling as to Venson.
Carroll Elmore (S-2)
¶ 18. The State explained that it struck Elmore because he was a retired professor, he disclosed that his daughter had a felony conviction, and he appeared upset for having to reveal that information, and had "somewhat of an attitude for the rest of the day." A prospective juror's hostile demeanor is a valid race-neutral reason for a peremptory strike. Manning v. State, 765 So.2d 516, 520(11) (Miss.2000) (citing Fleming v. State, 732 So.2d 172, 179(21) (Miss.1999)). Our supreme court has also held as valid justification for a peremptory strike a juror's family member having been convicted of a crime. Ratliff v. State, 740 So.2d 359, 360(8) (Miss.1999); Griffin v. State, 607 So.2d 1197, 1202-03 (Miss.1992). Therefore, we find no error in the trial judges finding that the State struck Elmore for valid race-neutral and gender-neutral reasons.
Sylvester Hall (S-3)
¶ 19. When asked for the reasons Hall was peremptorily struck, counsel for the State responded that Hall knew the defense witness Pork. He also noticed that Hall, at one point, smiled at Golden and "kind of nodded his head." A prospective juror's acquaintance with the defendant or his family is a valid reason to exercise a peremptory strike. Flowers, 947 So.2d at 918-19 (11-13). Also, as stated previously, a juror's demeanor is a valid neutral reason to peremptorily strike a juror. Manning, 765 So.2d at 520(11) (citing Fleming, 732 So.2d at 179(21)). As the State offered two valid reasons for striking Hall, we find no error in the trial judge's finding that Hall was not stricken for discriminatory reasons.
Ellis Sutton (S-4)
¶ 20. Counsel for the State explained that Sutton was struck because he failed to fill out his juror card completely. The State also stated that, earlier in the week, Sutton was excused from jury service in an unrelated case but "remained all day and hung out with that defendant." In Lockett v. State, 517 So.2d 1346, 1356-57 (Miss. 1987), our supreme court endorsed a non-exhaustive list of reasons accepted by other jurisdictions as race-neutral. Two of these approved reasons, relevant to the striking of Sutton, were the failure to complete a juror's information card and a prosecutor's distrust of a juror. Id. Because the State offered neutral justification for striking Sutton, we find no error here.
Thomas Wicks (S-5)
¶ 21. The State struck Wicks because Wicks marked "disabled" on his juror information card and failed to complete the card. Counsel for the State also explained that Wicks knew an Officer Keith Jackson, who, earlier in the week, expressed to the State his lack of confidence in Wicks's ability to be an impartial juror. Counsel for Golden responded that Wicks did completely fill in every blank on his card. Golden's attorney also stated that he did not recall whether or not Officer Jackson was going to be called as a witness in the trial. The trial court then determined that the reasons given were race/gender-neutral and found no Batson violation. We do not find the trial judge's determination to be clearly erroneous. As noted above, the prosecution's distrust of a juror and the failure to complete a juror information card are acceptable reasons for a peremptory strike. Id.
¶ 22. We find that the State offered race-neutral and/or gender-neutral reasons for its five peremptory strikes. Accordingly, we do not find the trial court's ruling *1032 that the State did not exercise purposeful discrimination in striking the challenged jurors to be clearly erroneous. This issue is without merit.
II. Whether the trial court erred by admitting the testimony of Jan Sample, clinical director, Family Crisis Services, and the videotape of her interview with the victim.
¶ 23. Here, Golden argues that the trial court erred in admitting the testimony of Sample and the videotape of the interview between Sample and Sally pursuant to the tender years exception to the hearsay rule under Mississippi Rule of Evidence 803(25). He contends, for the first time on appeal, that the trial court erred in allowing the State to improperly bolster Sally's testimony with this evidence. Golden's motion in limine to exclude Sample's testimony only pertained to Sally's hearsay statements. Because Golden did not assert improper bolstering as a ground for objection at trial, this issue was not preserved for appeal; therefore, we decline to address it. Smith v. State, 925 So.2d 825, 835(26) (Miss.2006). Accordingly, we will focus our examination under this assignment of error to determine whether Sample's testimony and the video interview were properly admitted pursuant to Rule 803(25).
¶ 24. We review the admission or exclusion of evidence for abuse of discretion. Hobgood v. State, 926 So.2d 847, 852(11) (Miss.2006) (citing Clark v. State, 891 So.2d 136, 139(11) (Miss.2004)). Mississippi Rule of Evidence 803(25) provides in pertinent part:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness.
¶ 25. Because Sally testified at trial, this issue turns on whether the "time, content, and circumstances of the statement provide[d] substantial indicia of reliability[.]" Id. As required by Rule 803(25), the trial judge conducted a hearing outside the jury's presence. The trial judge viewed the video and determined that the statement was sufficiently reliable. We find the record to support the trial judge's ruling. Accordingly, we find no error in the admission of Sample's testimony or the videotape of the interview conducted between Sample and Sally.[4]
III. Whether the trial court erred in permitting Jan Sample to testify as to the veracity of the victim.
¶ 26. Under this assignment of error, Golden contends that the trial judge erred when it allowed Jan Sample to testify that she believed what Sally told her during the forensic interview. Golden acknowledges that no contemporaneous objection to the statement was made at trial. However, he contends that it was plain error to allow the testimony into evidence.
¶ 27. Golden's argument stems from the following exchange which took place during direct examination of Sample:

*1033 Q. Okay. Ms. Sample, based on your experience, do children lie about being sexually abused?
A. Usually children will lie to get out of trouble not to get into trouble, so  I mean, we have had some [cases] that there have been no findings [of abuse], but, no, I have not found them to lie.
Q. Based on your expert opinion, do you believe what [Sally] was saying?
A. Yes, I do.
¶ 28. As Golden failed to raise an objection at trial, we find this issue to be procedurally barred. Anthony v. State, 936 So.2d 471, 478(¶ 22) (Miss.Ct.App.2006). Moreover, assuming that the bar was not in place, which we do not, the issue would nevertheless be without merit. In the discussion below, we address Golden's claims under this assignment of error in the interests of explanation.
¶ 29. Golden asserts correctly that an expert called to testify under Mississippi Rule of Evidence 702 in a child abuse case may not give a direct opinion as to the victim's veracity. Hobgood, 926 So.2d at 853-55 (18-23); see also Griffith v. State, 584 So.2d 383, 386 (Miss.1991) (citations omitted). Indeed, this court has found that "`a witness's opinion that the alleged victim was telling the truth is of dubious competency and, therefore, is inadmissible.'" Lattimer v. State, 952 So.2d 206, 221(40) (Miss.Ct.App.2006) (quoting Elkins, 918 So.2d at 831-32(9)). The line between admissible and inadmissible expert testimony in a child sex abuse case is often difficult to discern. In Elkins, this court explained that, "while an expert may not opine that an alleged child sex abuse victim has been truthful, the scope of permissible expert testimony under Rule 702 includes an expert's opinion that the alleged victim's characteristics are consistent with those of children who have been sexually abused." Elkins, 918 So.2d at 832(9) (citing U.S. v. Whitted, 11 F.3d 782, 785-86 (8th Cir.1993)).
¶ 30. We note that, prior to making the statement challenged under this assignment of error, Sample permissibly offered the following testimony that she found Sally's rendition of events consistent with a child who has been sexually abused:
Q. Ms. Sample, after interviewing [Sally], have you formed an expert opinion as to whether or not she was sexually abused?
A. Yes.
Q. And what is that opinion?
A. The details are consistent with a child that has been sexually abused.
Q. What are you basing your decision  basing your opinion on?
A. The consistency of her report. I asked her the same question several times in a lot of different ways, and she kept saying the same thing over and over, and she [was] able to give details. . . . And then her whole demeanor.
¶ 31. Following these statements, Sample was allowed to give the challenged testimony, which we conclude exceeded the scope of permissible expert testimony as a direct opinion bearing on Sally's truthfulness. Although the admission of the challenged testimony was error, we do not find such error to require reversal. Our supreme court has stated that, while inadmissible, "this Court has never explicitly held that a direct comment on a child sex abuse victim's veracity is reversible error. . . ." Smith v. State, 925 So.2d 825, 835-36(27) (Miss.2006) (citations omitted).
¶ 32. Moreover, Golden's contention that allowing the testimony into evidence constitutes plain error notwithstanding his failure to object at trial is without merit. On this point, we find our decision in Lattimer to be controlling. In Lattimer, an *1034 expert testified without objection that he found the victim to be "highly credible." Lattimer, 952 So.2d at 221-22(40). After finding Lattimer's argument to be procedurally barred, we stated as follows regarding plain error:
Furthermore, [the victim] testified before the jury. The jury had its own opportunity to evaluate her as well as her credibility as a witness. If allowing [the expert] to express his professional opinion of her credibility without defense objection is plain error, which we do not so conclude, then certainly any error was harmless beyond a reasonable doubt.
Id. at 222(41).
¶ 33. In this case, Sally similarly testified before the jury. Therefore, even if the bar was not in place, admitting Sample's testimony was not error. Based on the abovementioned analysis as well as our standard of review, we find this issue to be without merit.
IV. Whether the trial court erred in denying Golden's motion for a directed verdict, his request for a peremptory instruction, and his motion for judgment notwithstanding the verdict.
¶ 34. A motion for a JNOV, a peremptory instruction, or a directed verdict all challenge the legal sufficiency of the evidence. Shumpert v. State, 935 So.2d 962, 966(¶ 8) (Miss.2006) (citation omitted). On appeal, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. Reversal is required where the facts and inferences "`point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty. . . .'" Bush v. State, 895 So.2d 836, 843(16) (Miss.2005) (quoting Edwards v. State, 469 So.2d 68, 70 (Miss. 1985)).
¶ 35. Golden was convicted of fondling under Mississippi Code Annotated section 97-5-23 (Rev.2006), which provides that it is a felony for:
Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent.....
¶ 36. The thrust of Golden's argument under this issue is that the evidence was insufficient to convict him due to minor inconsistencies in Sally's testimony and the testimony of others. It is well settled that the jury is the "final arbiter of a witness's credibility." Morgan v. State, 681 So.2d 82, 93 (Miss.1996). The jury heard Sally's testimony in which she stated that, on the night in question, Golden went to the back room where Sally was playing on the computer, pulled her pants and panties down, and licked her vagina three or four times. The testimony of the other witnesses did not vary in any material respect from Sally's version of events.
¶ 37. Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to support the jury's verdict of guilty. Any inconsistencies or contradictions in Sally's testimony were obviously resolved by the jury in favor of the State. This issue is without merit.
V. Whether the trial court erred in denying Golden's motion for a new trial.
¶ 38. A motion for new trial challenges the weight of the evidence. On appeal, we *1035 will not disturb a verdict unless "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable result." Bush, 895 So.2d at 844(¶ 18). We view the evidence in the light most favorable to the verdict and will reverse only where the trial judge has abused his or her discretion. Id.
¶ 39. As discussed above, there was ample evidence for the jury to convict Golden. He fails to direct this Court to any evidence in the record which weighs heavily against the jury's finding. In essence, Golden takes issue with the fact that the State presented no physical evidence to prove that he fondled Sally. However, we note that the testimony of the victim of a sex crime, even if uncorroborated, is sufficient to support a conviction "where it is consistent with the circumstances." Goss v. State, 465 So.2d 1079, 1082 (Miss.1985). Accordingly, we find no merit to this issue.
VI. Whether Mississippi Code Annotated section 97-5-23 (Rev.2006) comports with equal protection.
¶ 40. Golden, in a pro se capacity, asserts that Mississippi Code Annotated Section 97-5-23(1) differentiates between males and females, and thus does not comport with the equal protection clause of the United States Constitution. We disagree. Section 97-5-23(1) applies to "[a]ny person over the age of eighteen (18) years." The statute is gender-neutral, and was so at the time of the offense. There is no merit to this assignment of error.
¶ 41. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF FONDLING A CHILD AND SENTENCE TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] In addition to the appellate brief submitted on Golden's behalf by his attorney, Golden filed a brief pro se, which raised this issue.
[2] Sally is a pseudonym for the victim who is not identified in this opinion.
[3] The record does not indicate which four of the five jurors struck peremptorily were black and which one was white.
[4] In so holding, we acknowledge that, in a criminal case, the defendant's Sixth Amendment right to confrontation must be respected. Smith, 925 So.2d at 837(29). To this end, we note that Sally testified at trial; therefore, Golden's right to confront Sally was not violated. See Elkins v. State, 918 So.2d 828, 832(12) (Miss.Ct.App.2005).