ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Union County Circuit Court found Pinkie Pul-liam guilty of two counts of selling cocaine. Pulliam appeals and claims the circuit court erred when it overruled his objection after the prosecution used peremptory strikes to remove the last three “minority” members of the venire. Pul-liam also claims the circuit court erred when it initially overruled his objection to a law-enforcement officer’s testimony that people who use drugs commonly smoke “Black & Mild” cigars. Although the circuit court later reversed itself and instructed the jury that it was to disregard that testimony, Pulliam claims the circuit court’s instruction did not remedy its error. Finally, Pulliam argues that there was insufficient evidence to support both of the jury’s verdicts. Alternatively, Pul-liam claims the verdicts are contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2009, Clinton Bailey acted as a confidential informant for the New Albany Police Department. Bailey called Officer Chris Glasson of the New Albany Police Department and informed him that he had an opportunity to buy cocaine from Pul-liam. Bailey borrowed Pulliam’s car and met with two law-enforcement officers: Officer Mike Erby of the New Albany Police Department and Deputy Jeff Chism *110 of the Union County Sheriffs Department. Deputy Chism searched the car Pulliam was driving and Officer Erby searched Bailey. Deputy Chism placed video-surveillance equipment in Pulliam’s car while Officer Erby placed clandestine audio and video equipment on Bailey. The law-enforcement officers gave Bailey sixty dollars to buy cocaine. Bailey then went and bought sixty dollars’ worth of crack cocaine from Pulliam. After the exchange, Bailey drove Pulliam’s car back to meet with Officer Erby and Deputy Chism. Bailey surrendered the cocaine to the law-enforcement officers, who placed it in an evidence bag.
¶ 3. Nineteen days later, Bailey again informed authorities that he had an opportunity to buy cocaine from Pulliam. After a nearly identical pre-buy meeting, Bailey and the car he was driving were wired with surveillance equipment. Authorities again provided Pulliam with sixty dollars to buy cocaine. Following the transaction, Bailey met with Officer Erby and Officer Glasson. As before, Bailey gave the officers the cocaine that he had bought from Pulliam.
¶ 4. Pulliam was later indicted and charged with two counts of selling cocaine. Pulliam went to trial on June 14, 2011. Pertinent facts and procedural matters will be discussed in greater detail below. Suffice it to say, the jury found Pulliam guilty of both counts. The circuit court sentenced Pulliam to two concurrent sentences of thirty years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and twenty-five years to serve. For count II, the circuit court also ordered that Pulliam serve five years of post-release supervision. Following unsuccessful motions for a judgment notwithstanding the verdict (JNOV) and a new trial, Pulliam appeals.[1]
ANALYSIS
I. THE JURY PANEL
¶ 5. Pulliam, who is African American, claims the circuit court erred when it overruled his objections after the prosecution used its peremptory strikes on two of the three African American members of the venire and another member of the venire who was described as a “minority.” The record does not indicate exactly how many people were summoned for jury duty, but there were forty-three people on the veni-re. Three members of the venire were African American. One potential juror, Lakshan Fernando, indicated that he had been born in Sri Lanka. However, he was also described as Hispanic. Pulliam’s attorney moved “to basically re-draw a veni-re” because there was a “lack of minorities” on the venire.
¶ 6. Phyliss Stanford, the Union County Circuit Clerk, testified that the venire was drawn by sending a letter to randomly selected people from the Union County voter rolls. Stanford further testified that 16.2% of Union County residents qualified as “minorities.” Although less than ten percent of the venire met that description, the circuit court found that there was no evidence of systematic exclusion of people who could be described as “minorities” from the venire. Accordingly, the circuit court overruled Pulliam’s motion to quash the entire venire.
¶ 7. However, the circuit court agreed to reshuffle the order of the venire because the three African American prospective jurors were listed as prospective jurors 29, 41, and 43. Commendably, the circuit *111 court memorialized its reshuffling methodology for the record. The circuit court stated:
Pursuant to the [c]ourt’s ruling, the jury venire was reshuffled. It could not be done by computer and, therefore, it was done by hand. The names of the individuals on the venire were folded and placed in a box. A top was placed on the box and the box was shuffled several times to make sure the names were distributed at random. The [cjourt was present during this process, as well as the defendant and his attorney and the attorneys from the State. There was no objection to the process ..., and I will ask if there’s any objection now....
Neither the prosecution nor Pulliam’s attorney objected. After the reshuffling process, the African American members of the venire were listed as prospective jurors 15, 17, and 24. Fernando became prospective juror 18.
¶ 8. Following voir dire, the circuit court excused prospective juror 15, Barbara Cox, because her mother was scheduled to have surgery, and Cox needed to be with her mother. Accordingly, there were two African Americans on the venire. Fernando also remained on the venire.
¶ 9. Pulliam and the prosecution each had six peremptory strikes. The prosecution used its first peremptory strike on a Caucasian member of the venire. However, the prosecution exercised its second peremptory strike on prospective juror 17, Pamela Ball. After the prosecution used its third peremptory strike on prospective juror 18, Fernando, Pulliam’s trial attorney objected “to the State’s use of a p[er]emp-tory under Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)].”
¶ 10. Although the prosecution did not concede that Pulliam had demonstrated a prima facie case of purposeful discrimination, the prosecution explained why it had exercised peremptory strikes on Ball and Fernando. The prosecution’s explanations are discussed in greater detail below. The circuit court found that Pulliam had not demonstrated a prima facie case of purposeful discrimination. The circuit court further found that the prosecution’s explanations were race-neutral.
¶ 11. The prosecution tendered the ve-nire to Pulliam, whose trial attorney exercised five peremptory strikes on Caucasian members of the venire. After Pulliam tendered the venire back to the prosecution, it exercised its fourth peremptory strike on prospective juror 24, Glorius Keys, the final African American member of the venire. Pulliam’s trial attorney raised another Batson objection. Again, the prosecution explained the basis for using a peremptory challenge on Keys without conceding that Pulliam had demonstrated a prima facie case of purposeful discrimination. The circuit court again held that Pulliam had not demonstrated a prima facie case of purposeful discrimination, and even if he had, the prosecution’s explanation for striking Keys was race-neutral.
¶ 12. Pulliam claims the circuit court erred when it overruled his Batson objections. According to Pulliam, the circuit court erred “in not following proper Bat-son procedure.” Finally, Pulliam claims the circuit court “further compounded the error when [it] refused to give [Fernando] an official work excuse.” However, the record reflects that the circuit court specifically told Fernando that it would issue a work excuse in the event that Fernando was selected as a member of the jury. In other words, the record does not support Pulliam’s claim that the circuit court refused to provide Fernando with a work excuse.
*112 ¶ 13. “A peremptory strike may not be used to exclude a potential juror based on race as such a strike violates constitutional guarantees of equal protection.” Golden v. State, 984 So.2d 1026, 1030 (¶ 13) (Miss.Ct.App.2008) (citation omitted). The Mississippi Supreme Court has instructed:
[A] Batson challenge to a peremptory strike should proceed as follows. First, the defendant must establish a prima facie case of discrimination in the selection of jury members. The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.
Birkhead v. State, 57 So.3d 1223, 1229 (¶ 22) (Miss.2011) (citations omitted). “[T]he pivotal question is whether the opponent of the strike has met the burden of showing that [the] proponent has engaged in a pattern of strikes based on race or gender[.]” Puckett v. State, 788 So.2d 752, 757 (¶ 10) (Miss.2001) (citations and internal quotation omitted). “[I]n other words, [we must determine whether] the totality of the relevant facts gives rise to an inference of discriminatory purpose.” Id.
¶ 14. We need not consider whether the circuit court erred when it declined to find that Pulliam had demonstrated a prima facie case of purposeful discrimination. When the prosecution explains its use of peremptory challenges, it is immaterial whether there is a prima facie demonstration of purposeful discrimination. Golden, 984 So.2d at 1030 (¶ 15) (citing Burnett v. Fulton, 854 So.2d 1010, 1014 (¶ 9) (Miss.2003)).
¶ 15. The prosecution noted that prospective juror 17, Ball, knew Pulliam and his family. She also knew at least three witnesses. Knowing the defendant or the defendant’s family is a valid race-neutral reason for striking a prospective juror. Flowers v. State, 947 So.2d 910, 922 (¶ 26) (Miss.2007).
¶ 16. The prosecutor explained that he used a peremptory challenge on Fernando because Fernando was concerned that he could not get permission to miss work from his employer in Memphis, Tennessee. The prosecutor said he did not want anyone on the jury who was more interested in being somewhere else. Striking a prospective juror whose demeanor indicates that he is hostile to being in court is also sufficiently race-neutral. See Davis v. State, 660 So.2d 1228, 1242 (Miss.1995) (citation omitted). Later, the prosecution further explained that it also appeared that Fernando had difficulty comprehending that the circuit court could give him an excuse from work. According to the prosecutor, Fernando “wasn’t able to comprehend exactly what was going on.” A prospective juror’s responses indicating a lack of understanding has been held to be a valid race-neutral reason for exercising a peremptory strike. See Perry v. State, 637 So.2d 871, 874 (Miss.1994). Finally, the prosecution explained that it used a peremptory challenge on prospective juror 24, Keys, because Keys was “looking to be off the jury[, and she was] telling everybody that wanted to hear that she was moving and didn’t want to be here.” Additionally, the prosecution noted that Keys was related to one of Pulliam’s witnesses. We do not find that the circuit court abused its discretion when it found that the prosecution’s explanations were race-neutral and non-pretextual.
*113 ¶ 17. Furthermore, “[t]he burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination.” Golden, 984 So.2d at 1030 (¶ 13) (quoting Flowers, 947 So.2d at 917 (¶ 9)). When a defendant fails to rebut the prosecution’s race-neutral reasons for a peremptory strike, “the trial judge may base his decision only on the reasons given by the [prosecution].” Id. at 1030 (¶ 15) (quoting Coleman v. State, 697 So.2d 777, 786 (Miss.1997)). Pulliam did not rebut the prosecution’s race-neutral explanations.
¶ 18. According to the Mississippi Supreme Court, “on appellate review, a trial court’s determinations under Batson are accorded great deference because they are largely based on credibility.” Birkhead, 57 So.3d at 1229 (¶22). We may only reverse if the circuit court’s decisions under Batson were clearly erroneous. Id. Pulliam declined to rebut the prosecution’s race-neutral explanations for its peremptory strikes. Based on the record before us and our obligation to defer to the circuit court, we do not find that the circuit court erred when it overruled Pulliam’s Batson objections. There is no merit to this issue.
II. “BLACK & MILD” CIGARS
¶ 19. During Officer Glasson’s direct testimony, the prosecution played the video transmissions of Bailey’s “buys” from Pulliam. Officer Glasson testified that he saw Pulliam holding money and a cigar during one of the videos. On cross-examination, Pulliam’s trial attorney attempted to demonstrate that Officer Glasson could not testify for certain that Pulliam was holding money and a cigar. When the prosecution questioned Officer Glasson on redirect, the following exchange occurred:
Q. Based on your training and experience and your observation there, what’s that in the hand of Pinkie Pulliam?
A. It looks like money and a Black & Mild cigar.
Q. What’s a Black & Mild cigar?
A. That’s a cigar that comes in a single pack that you can buy pretty much anywhere that’s got a white tip and [is] approximately four or five inches long, about the size of a pen.
Q. About the size of a pen, cylinder shape?
A. With a white tip.
Q. White tip. Are Black & Mild cigars common based on your training and experience of people who use crack cocaine?
A. They’re common.
BY [PULLIAM’S TRIAL ATTORNEY]: Objection, your Honor.
BY THE COURT: Overruled, if he knows.
A. In my experience, they’re common with people who use narcotics.
¶ 20. The prosecution called Officer Erby after Officer Glasson testified. After Officer Erby testified on direct examination, the circuit court announced that the jury would be excused for its afternoon recess. However, the circuit court also made the following announcement:
I have another matter before the jury. Ladies and gentlemen, earlier, Officer Glasson was testifying and a question was asked concerning what appeared to be a cigar in the hands of Mr. Pulliam. An objection was made by counsel for the defendant prior to [Officer] Glasson giving his opinion that it was customary for drug dealers to use that type of cigar, if, in fact, it was one.
I have reconsidered my ruling and the Court is sustaining the objection and I am directing you to disregard the ques *114 tion and the answer in regard to drug dealers having a propensity to use a certain type of cigar. Do you understand what I’m telling you?
The record reflects that the jury panel “nod[ded] affirmatively.” The circuit court then asked, “Is there anyone who will not abide by my instructions in this regard? I would like to see your hand[.]” According to the transcript, there was no response. Finally, the circuit court stated:
I take it then all of you will follow my instructions in this matter. Also I want you to understand if you believe that Mr. Pulliam was holding a cigar, that is not evidence that he was dealing in drugs nor that he had a propensity to deal in drugs. Do you understand what I’m telling you?
Again, the transcript indicates that the jury panel nodded affirmatively.
¶ 21. Pulliam argues that the circuit court erred when it overruled his unspecified objection to Officer Glasson’s testimony. Pulliam further argues that the circuit court’s subsequent instructions were insufficient to cure its earlier error. According to Pulliam, he is entitled to a new trial based on the circuit court’s error. We are mindful the circuit judge “enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the [appellate court] will not reverse this ruling.” Shaw v. State, 915 So.2d 442, 445 (¶ 8) (Miss.2005).
¶ 22. We do not find that the circuit court committed reversible error. ‘Where no serious and irreparable damage was engendered by an improper remark, a curative instruction is deemed sufficient to remove the taint from the minds of the jurors.” Clark v. State, 40 So.3d 531, 539 (¶ 16) (Miss.2010). “Juries are presumed to follow the instructions given to them by the court.” Id. All members of the jury indicated that they would disregard Officer Glasson’s testimony that it was common for drug users to smoke Black & Mild cigars. Additionally, Pulliam was charged with selling drugs rather than possessing or using drugs. Whatever minimal prejudice Officer Glasson’s testimony caused was mitigated by the circuit court’s curative instruction. We find no merit to this issue.
III. SUFFICIENCY OF THE EVIDENCE
¶ 23. As our Mississippi Supreme Court has stated:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quota *115 tions omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense[.]” Id. (internal citations and quotations omitted).
¶ 24. The law-enforcement officers testified that prior to both sales, they had searched Bailey and the vehicles he was driving. Bailey was then outfitted with surveillance equipment. The law-enforcement officers gave Bailey money to buy cocaine. Bailey did not have cocaine before he went and met with Pulliam. When Bailey returned to the law-enforcement officers, he had cocaine but none of the money he had received. Bailey testified that he bought cocaine from Pulliam twice. Alicia Waldrop, a forensic scientist, confirmed that the substances were cocaine. Although the surveillance equipment did not capture every spoken word during the brief interactions between Bailey and Pulliam, the equipment tended to corroborate Bailey’s testimony that he and Pulliam exchanged money for cocaine. The jury heard testimony that Bailey had financial and liberty interests in acting as a confidential informant. Be that as it may, the jury is the sole judge of the credibility of witnesses, and “the jury’s decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.” Hollins v. State, 799 So.2d 118, 122 (¶ 10) (Miss.Ct.App.2001). The prosecution was not obligated to present evidence that Pulliam was guilty beyond a shadow of a doubt. There was sufficient evidence to support the jury’s conclusion that Pulliam was guilty of selling cocaine to Bailey on two different occasions. Consequently, we find no merit to this issue.
IV. WEIGHT OF THE EVIDENCE
¶ 25. We are mindful that as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The supreme court has further instructed that when reviewing a trial court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the ground[ ] that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote and internal citations and quotations omitted).
¶ 26. For the reasons expressed in our analysis of the sufficiency of the evidence, we do not find that it would sanction an unconscionable injustice to allow Pulliam’s convictions to stand. Viewed in the light most favorable to the jury’s verdicts, we do not find that the verdicts were contrary to the overwhelming weight of the evidence. *116 It follows that we find no merit to this issue.
¶ 27. THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SALE OF COCAINE, AND SENTENCE OF THIRTY YEARS, WITH FIVE YEARS SUSPENDED AND TWENTY-FIVE YEARS TO SERVE; AND COUNT II, SALE OF COCAINE, AND SENTENCE OF THIRTY YEARS, WITH FIVE YEARS SUSPENDED AND TWENTY-FIVE YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. Law students Joanna Satcher and Tiffany Speegle contributed to Pulliam’s brief under the supervision of Professor Phillip W. Broad-head, director of the Criminal Appeals Clinic at the University of Mississippi School of Law.