# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01715-COA

**RYAN NICHOLAS O'DONNELL A/K/A RYAN**         **APPELLANT**
**O'DONNELL, JR. A/K/A RYAN O'DONNELL**
**A/K/A JOSEPH LYNN FRANCIS**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/2013 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF METHAMPHETAMINE AND SENTENCED AS A HABITUAL OFFENDER TO EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 04/07/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES, AND MAXWELL, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. After a two-day trial, a Harrison County jury convicted Ryan O'Donnell of possession

of methamphetamine. The trial court sentenced him to eight years as a habitual offender in

the custody of the Mississippi Department of Corrections (MDOC). Finding no error, we affirm.[1]

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶2. On the morning of February 24, 2012, Investigator Matt Haley and Sergeant Christopher Hearn of the Harrison County Sheriff's Department participated in a drug "roundup," where a group of law enforcement officers went out together and attempted to serve several outstanding warrants. They had an arrest warrant for O'Donnell and discovered he was at the Broadway Express Inn, room 132, in Biloxi, Mississippi. Investigator Haley testified that at approximately 11:00 a.m. they arrived at the motel and knocked on the door of room 132. When there was no answer, the officers went to the check-in area of the motel, and explained to motel management that they had an active warrant for someone believed to be in room 132, and asked for assistance in getting into the room. It was past checkout time; so the motel manager walked with the two law enforcement officers to the room and opened the door. They found O'Donnell inside the room.

¶3. When the motel door opened, O'Donnell was getting out of bed. There were two other individuals in the other bed, later identified as Angela Warfield and Heath Gagney.[2]

---

[1] Under a motion filed with this Court, law students from the University of Mississippi School of Law Criminal Appeals Clinic were appointed as special counsel for O'Donnell. Law students Erin N. King and Cori L. Benefiel prepared O'Donnell's brief under the supervision of Attorney-Professor Phillip W. Broadhead, director of the clinic. Law students Brendon Clark and Kyle Prince orally argued the case.

[2] Warfield testified that O'Donnell often shared methamphetamine with her and Gagney, who was her boyfriend. O'Donnell testified that Gagney was a regular "cooker" (manufacturer) of methamphetamine.

Investigator Haley confirmed O'Donnell's identity, placed him in handcuffs, and asked if he had any identification. O'Donnell responded that he did, but did not know where it was; so Investigator Haley asked if he could look around for it. O'Donnell said "okay." Investigator Haley began to look near O'Donnell's bed, but O'Donnell directed him to the area near the television. There, Investigator Haley found a white pouch. He picked it up, felt it, and determined there to be some sort of card. Thinking he had located an identification card, he unzipped the pouch. Inside of the pouch, he found O'Donnell's Mississippi identification card, a VISA card, and "a clear plastic bag containing an off-white powder substance." O'Donnell denied the powder substance was his. It was sent to the Mississippi Crime Lab and found to be .79 grams of methamphetamine.

¶4.     In March 2013, O'Donnell was indicted for possession of methamphetamine, and the indictment was later amended to charge him as a habitual offender. O'Donnell filed a motion to suppress the evidence of the search, which was denied. During jury selection, the defense raised a *Batson* challenge. The jury was selected, and the case proceeded to trial.

¶5.     In addition to Investigator Haley, John Moran testified for the prosecution. Moran, a forensic scientist, was accepted as an expert in controlled-substance analysis and gave the opinion that the substance obtained from the pouch was methamphetamine. Warfield testified for the defense. She stated because of O'Donnell's health issues, he takes a lot of medicine, but even so, "when he is not on dope he gets really, really sick." She also stated that when O'Donnell had drugs, he "always shared." O'Donnell testified in his own defense. He admitted that he was addicted to methamphetamine, and that the white pouch belonged

3

to him, but denied knowledge of the drugs found in the pouch. O'Donnell admitted that he and his companions had been looking for methamphetamine the night before the roundup, even though Gagney, who "cooks on a regular basis," was with them. Without the drug, O'Donnell became sick – throwing up, sweating, and shaking. He testified that if he had known methamphetamine was in his pouch, he would have taken it immediately. The jury convicted O'Donnell as charged, and he was sentenced as a habitual offender to serve eight years in the custody of the MDOC. O'Donnell's motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), was denied.

¶6.    On appeal, O'Donnell argues that the trial court erred in failing to suppress evidence found during the search of the motel room, in denying his *Batson* challenge, and in denying his motion for a JNOV or new trial. Finding no error, we affirm.

**ANALYSIS**

**I.    Motion to Suppress Evidence**

¶7.    O'Donnell argues that the trial court erred in failing to suppress evidence found in his motel room. He claims the initial entry and arrest were premised on an unsigned arrest warrant, and Investigator Haley exceeded the scope of O'Donnell's consent when he unlawfully searched the white pouch, which was a closed container with Fourth Amendment protection.

¶8.    Regarding the denial of a motion to suppress, the reviewing court will determine whether the trial court's findings, under "the totality of the circumstances, are supported by substantial credible evidence." *Moore v. State*, 933 So. 2d 910, 914 (¶9) (Miss. 2006)

4

(citations omitted). "Where supported by substantial credible evidence, [the appellate court] shall not disturb those findings." *Id.* Additionally, the admission or exclusion of evidence is reviewed for abuse of discretion. *Brown v. State*, 119 So. 3d 1079, 1082 (¶11) (Miss. Ct. App. 2013).

### A. Arrest Warrant

¶9. O'Donnell first argues that the arrest warrant was invalid, as it lacked the signature of a judge or magistrate, which is a nonjurisdictional defect, and the officers had no independent probable cause for a warrantless arrest. *See Lanier v. State*, 450 So. 2d 69, 73 (Miss. 1984). As the State notes, however, this argument fails because it was not raised before the trial court in the pleadings, transcript, or other rulings, and is thus procedurally barred. *See Ross v. State*, 603 So. 2d 857, 861 (Miss. 1992). Moreover, the arrest warrant was not introduced into evidence. While an unsigned and incomplete warrant does appear in the record, it is an exhibit to O'Donnell's pro se motion for reconsideration of his sentence. There is nothing in the record to establish the origins or authenticity of this document. Additionally, the transcript of the hearing indicates this arrest warrant was not the one being executed on the day in question. During the hearing, O'Donnell's motion in limine and motion to suppress were heard. Regarding the motion in limine, the defense argued, and the State confirmed, that when O'Donnell was arrested, law enforcement officers were attempting to execute an arrest warrant for a methamphetamine-manufacturing charge, not a possession charge. The unsigned warrant in the record is for a possession of methamphetamine charge. We find this argument without merit.

5

### B.     Consent

¶10.    Next, O'Donnell claims the search of the motel room was illegally conducted because he did not voluntarily consent to the search for his identification, and even if he did, Investigator Haley exceeded the scope O'Donnell gave him.

¶11.    Searches must be conducted under a valid warrant or probable cause unless consent is given. *Lee v. State*, 100 So. 3d 982, 985 (¶10) (Miss. Ct. App. 2012) (citing *Jackson v. State*, 418 So. 2d 827, 830 (Miss. 1982)); *see Brown*, 119 So. 3d at 1082 (¶6) (warrant is not required when consent is given). When determining whether a consent to search is voluntary and not the result of coercion, the totality of the circumstances is examined. *Lee*, 100 So. 3d at 985 (¶10). Consent to a search not otherwise authorized by law is valid if "the person searched [is] aware he has the legal right to refuse." *Moore*, 933 So. 2d at 916 (¶19) (citations omitted). The person must knowingly and voluntarily waive the right not to be searched. *Id.* However, "the State is not required to demonstrate knowledge; rather, 'the burden is on the defendant to show impaired consent or some diminished capacity.'" *Id.* at (¶20) (quoting *Jones v. State*, 607 So. 2d 23, 29 (Miss. 1991)). Facts to consider in determining whether consent was voluntary are:

> [W]hether the circumstances were coercive, occurred while in the custody of law enforcement or occurred in the course of a station house investigation. The court must also look to the individual's maturity, impressionability, experience and education. Further, the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent. *If the consent occurred while the defendant was being generally cooperative, the consent is more likely to be voluntary . . . .*

*Id.* at 916-17 (¶20) (emphasis added) (quoting *Graves v. State*, 708 So. 2d 858, 863 (¶24)

6

(Miss. 1997)).

¶12.    Again, this argument is also procedurally barred because it was not specifically raised before the trial court. *See Ross*, 603 So. 2d at 861.  Further, the trial judge did not abuse his discretion in finding O'Donnell's consent was voluntary under the totality of the circumstances.  Though O'Donnell had been placed in handcuffs by Investigator Haley after his identity was initially determined, O'Donnell was extremely cooperative in agreeing to the search, and was not chemically impaired that morning. Law officers made no threats or promises to O'Donnell when his consent to search for his identification was made.  Instead, O'Donnell assisted the officers in the search by directing them to the television-stand area to find his identification, where they found the pouch.  O'Donnell, however, claims the officers pointed a gun to his head when they "barged" into the motel room, though Investigator Haley does not mention this alleged fact in his testimony.   The rest of O'Donnell's testimony corroborates Investigator Haley's testimony regarding consent to the search.

¶13.    In addition, O'Donnell claims the search exceeded any alleged consent. The standard for the scope of a suspect's consent under the Fourth Amendment is "objective" reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted).  A suspect may limit the scope of the search to which he consents. *Id.* at 252.  In O'Donnell's case, he gave Investigator Haley consent to search for the identification, and

7

directed him towards the area near the television.[3] Haley saw the zipped pouch in this area, picked it up, and felt what might be an identification card. He unzipped the pouch and found the card. The drugs were in the pouch with the identification card; so it cannot be said that the officer exceeded the consent to search. The testimony indicates that Investigator Haley did not continue to "plunder" through the pouch after he located the card – he merely came across the drugs at the same time he was looking for and found the identification card, as they were in the same area of the pouch. It is reasonable that an officer looking for an identification card would look inside a zipped pouch, especially when directed to the area by the suspect. The consent to search was not exceeded under the facts of this case.

### C.    Search Warrant

¶14.    O'Donnell also argues that Investigator Haley should have obtained a search warrant before opening and searching the white pouch in the motel room. To object to a warrantless search, the defendant must have "a subjective expectation of privacy in the object of the search." *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992). Exceptions to the requirement of obtaining a valid search warrant include a search incident to arrest and a search in plain view. *Graves v. State*, 708 So. 2d 858, 862 (¶22) (Miss. 1997). The "plain view" doctrine requires the police to have probable cause to search, without a warrant, evidence in plain view. *Carney v. State*, 525 So. 2d 776, 787 (Miss. 1988) (citing *Arizona*

---

[3] O'Donnell attempts to make the distinction that he directed Investigator Haley to look "on" the television for his identification, which is where his credit card and cigarettes were located, whereas Investigator Haley testified that O'Donnell stated it was "near" the television. However, in reading the transcript, O'Donnell states his identification was both "near" and "on" the television.

*v. Hicks*, 480 U.S. 321, 326 (1987)). "[I]nformation obtained by means of the eye where no trespass has been committed" in order to perform the search "is not illegally obtained." *Franklin v. State*, 587 So. 2d 905, 907 (Miss. 1991) (quoting *Patterson v. State*, 413 So. 2d 1036, 1038 (Miss. 1982)).

¶15. Again, we note that a search warrant is not required if consent to search is given. *Brown*, 119 So. 3d at 1081 (¶6). Here, O'Donnell gave Investigator Haley consent to search for his identification card, and once Investigator Haley opened the pouch to get the card he had felt, the baggie containing the drugs was in plain view. A search warrant was not necessary under these facts.

## II. *Batson* Challenge

¶16. O'Donnell claims the trial court erred in denying his *Batson* challenge when the trial judge found no systematic pattern of exclusion in the peremptory strikes exercised by the State against two black jurors. During jury selection, the State used six peremptory strikes to dismiss four white females, one white male, and one black female (Juror 7). Defense counsel used six peremptory strikes to dismiss five white males and one black female. The jurors accepted by the parties consisted of seven white females, two white males, two black females, and one Hispanic male.

¶17. "Peremptory strikes may not be used for the purpose of striking jurors based solely on their race or gender." *Talbert v. State*, 125 So. 3d 66, 73 (¶24) (Miss. Ct. App. 2013) (citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)). The trial judge's *Batson* determinations are given great deference on appeal, "as such determinations are based largely on

9

credibility." *Id.* (quoting *Perry v. State*, 949 So. 2d 764, 766 (¶5) (Miss. Ct. App. 2006)).

*Batson* challenges undergo a three-step analysis:

> (1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;
>
> (2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and
>
> (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.

*Smith v. State*, 90 So. 3d 122, 132 (¶37) (Miss. Ct. App. 2012) (quoting *Pruitt v. State*, 986 So. 2d 940, 942-43 (¶8) (Miss. 2008)). "The ultimate 'burden of persuasion rests with, and never shifts from, the opponent of the strike.'" *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 171 (2005)). A defendant satisfies *Batson*'s first step by "producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. If the defendant fails to make out a prima facie case showing a discriminatory purpose, the inquiry ends." *Id.* (internal quotation marks and citations omitted).

¶18. The State used its first peremptory strike against a white male and its second strike against the black female (Juror 7), at which point the defense pointed out that Juror 7 was only the second black person reached on the panel.[4] Later in the process, defense counsel objected when the prosecution struck Juror 28, a black male, for the alternate juror, stating

---

[4] Juror 2, a black female, had been accepted on the panel. The State also mentioned for the record that the defendant is a white male.

that the prosecution has "only accepted one other black on the whole venire."[5] The trial

judge responded to the defense's objection by stating:

> [Juror 28] was the first venire man for the alternate's position, so they struck one black on the main panel and accepted one black on the main panel. So the Court does not feel that that establishes a pattern of discrimination against any particular group, especially since that is an alternate strike. So I'm going to deny the *Batson* challenge on [Juror 28].

¶19. O'Donnell argues on appeal that the trial court should have required the prosecution

to give race-neutral reasons for the strikes. However, the trial judge properly ruled that

O'Donnell did not establish the first step of *Batson* – a prima facie case that there was an

inference of discrimination; thus, the burden never shifted to the State, the second step of the

*Batson* analysis. The State's initial peremptory strikes were used on four white females, one

white male, and one black female. The State used its one peremptory strike of an alternate

for a black male. The jury ultimately included two black females. We cannot say from the

record that O'Donnell met his burden of showing that the State "engaged in a pattern of

strikes based on race or gender." *See Pulliam v. State*, 115 So. 3d 108, 112 (¶13) (Miss. Ct.

App. 2013) (quoting *Puckett v. State*, 788 So. 2d 752, 757 (¶10) (Miss. 2001)). Since

O'Donnell failed to establish a prima facie case showing a pattern of discrimination, the

inquiry ended. Accordingly, the trial court did not err in denying O'Donnell's *Batson*

challenge.

### III. Sufficiency and Weight of Evidence

¶20. Finally, O'Donnell claims the jury verdict was against the sufficiency and weight of

---

[5] We note the defense struck a white male for alternate, and ultimately, a white female was chosen as the alternate.

the evidence. A motion for a directed verdict and a motion for a JNOV challenge the sufficiency of the evidence. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). "[T]he critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Id.* (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). "[A]fter viewing the evidence in the light most favorable to the prosecution, [if] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the reviewing court will affirm the denial of the motion for a JNOV. *Nolan v. State*, 61 So. 3d 887, 893 (¶24) (Miss. 2011) (quoting *Bush*, 895 So. 2d at 843 (¶16)). All credible evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

¶21. "A motion for [a] new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for [a] new trial." *Dilworth v. State*, 909 So. 2d 731, 737 (¶20) (Miss. 2005) (quoting *Howell v. State*, 860 So. 2d 704, 764 (¶212) (Miss. 2003)). The appellate court will not disturb the verdict unless allowing "it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence will be viewed in the light most favorable to the verdict. *Id.* It is the jury's role to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence. *Latiker v. State*, 918 So. 2d 68, 73 (¶12) (Miss. 2005).

¶22. O'Donnell was charged and convicted under Mississippi Code Annotated section 41-29-139(c)(1)(A) (Supp. 2014), which makes it a crime to possess less than one-tenth of a gram of a controlled substance. The two essential elements of drug possession are (1) knowledge and (2) possession. Miss. Code Ann. § 41-29-139(c). "To support a conviction for possession of a controlled substance, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011) (quoting *McClellan v. State*, 34 So. 3d 548, 553 (¶15) (Miss. 2010)). "Possession of a controlled substance may be actual or constructive." *Johnson v. State*, 81 So. 3d 1020, 1023 (¶7) (Miss. 2011). O'Donnell did not have actual possession of the methamphetamine; so he was convicted under the theory of constructive possession. To establish constructive possession, the drug merely has to be found near the defendant "in a place over which the defendant exercises dominion or control." *Glidden*, 74 So. 3d at 348 (¶20) (quoting *Hudson v. State*, 30 So. 3d 1199, 1204 (¶11) (Miss. 2010)). But a defendant's proximity to the drugs is not determinative in establishing constructive possession. *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011). When illegal substances are found on premises not owned by the defendant, "the State must show other incriminating circumstances, in addition to proximity, in order to prove constructive possession." *Cheatham v. State*, 12 So. 3d 598, 601 (¶7) (Miss. Ct. App. 2009) (citing *Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990)).

¶23. O'Donnell argues the State failed to prove beyond a reasonable doubt that he

knowingly and intentionally possessed the controlled substance, and that the white powdery substance found in the common area of the motel room was methamphetamine. We disagree. Investigator Haley testified that O'Donnell admitted the white pouch was his, and directed Haley to it in order to locate his identification card. Inside the pouch, Haley found O'Donnell's ID card, a VISA card, and "a clear plastic bag containing an off-white powder substance." Although O'Donnell denied that the methamphetamine was his, the other items, including the pouch, he claimed were his possessions, which he had brought to the motel. The pouch was on the TV stand in front of O'Donnell's bed, exactly where he directed Investigator Haley to search for his identification card. According to this incriminating evidence, O'Donnell was in constructive possession of the methamphetamine.

¶24.    As for the weight of the evidence, O'Donnell contends the State's expert witness's testimony was inadequate to establish that the white powder substance was methamphetamine. Again, we disagree. Moran, accepted as an expert in the area of forensic controlled substances, testified as to the weight of the bag of the powder substance (.79 grams). It was his opinion the baggie contained methamphetamine "within a reasonable degree of scientific certainty . . . . based upon [his] results and conclusions of the examinations, [his] training, and [his] experience." It is the province of the jury to determine the credibility of the witnesses, and here, the jury believed Moran's opinion.

¶25.    Nor were photographs necessary, as O'Donnell argues, to establish that the methamphetamine was in the pouch, or where in the motel room it was found. Investigator Haley testified that  due to the "unique" nature of a drug roundup,

14

everything is touch and go. Once the word gets out that we're picking up people on warrants, everybody seems to scatter and go in different directions. So there is some sense of urgency to put the handcuffs on whoever you're taking to jail, take them, drop them off and go back to the next one.

Therefore, he justifiably did not take any photographs. However, there was sufficient evidence to support the verdict without any photographs. Further, the verdict was not against the weight of the evidence.

¶26. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCE AS A HABITUAL OFFENDER OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.**