# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01611-COA

**ROBERT SMOOTS A/K/A ROBERT L. SMOOTS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2018 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | ROBERT SMOOTS (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 06/16/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial in the Madison County Circuit Court, Robert Smoots was convicted of possession of 2.21 grams of cocaine with the intent to distribute within 1,500 feet of a church and tampering with evidence. The State alleged that Smoots flushed the cocaine down the toilet of his pool hall in Canton just before law enforcement entered with a search warrant. On appeal, Smoots's appointed counsel argues that the evidence was insufficient to support the convictions, that Smoots was unfairly prejudiced by evidence related to a prior drug sale, and that a new trial is required because there is doubt that the

jury's verdict was unanimous.  Smoots also raises additional issues in a pro se brief.

¶2.     We conclude that the evidence was insufficient for a rational juror to find beyond a reasonable doubt that Smoots—as opposed to either of the two other men present in the pool hall—possessed and flushed the cocaine.  Therefore, we reverse and render both convictions. Our holding renders all remaining issues moot.

**FACTS AND PROCEDURAL HISTORY**

¶3.     On March 24, 2017, the Narcotics Division of the Madison County Sheriff's Office obtained a warrant to search a pool hall in Canton run by Robert Smoots.  They obtained the warrant based on an affidavit stating that a confidential informant (CI) purchased cocaine at the pool hall for forty dollars using "marked bills" the previous day.

¶4.     Officers executed the search warrant around 3 p.m. on March 24.  They announced their presence at the front door of the pool hall, knocked loudly, and demanded entry, but no one answered the door.  Additional officers stationed at a side door to the pool hall then entered by forcefully opening that door.  When they entered, they found three men sitting around a table. Officers noticed that a toilet in the pool hall was running as though it had just been flushed.  They suspected that one of the men at the table might have flushed drugs down the toilet, so they checked the sewer cleanout outside the pool hall.  There officers found a wad of toilet paper wrapped around approximately ten rocks of crack cocaine.  The officers then flushed the toilet inside the pool hall to confirm that it drained through the sewer cleanout, which it did.

¶5.     The three men that officers found sitting at a table inside the pool hall were Robert

2

Smoots, Smoots's nephew Demario, and Jerome Hodges. Smoots had more than $200 in cash in his pockets. By checking the serial numbers on the bills, officers determined that Smoots had one of the two "marked" twenty-dollar bills their CI had used to purchase cocaine at the pool hall the previous day.

¶6. Smoots and Demario were jointly indicted for possession of more than two grams but less than ten grams of cocaine with the intent to distribute within 1,500 feet of a church and tampering with evidence. *See* Miss. Code Ann. § 41-29-139(a)(1) & (b)(1)(B) (Supp. 2016); Miss. Code Ann. § 41-29-142 (Rev. 2013); Miss. Code Ann. § 97-9-125 (Rev. 2014). The State nolle prosequied the charges against Demario on the first day of Smoots's trial.

¶7. Prior to trial, Smoots filed a motion in limine to exclude any evidence of the sale that allegedly occurred at the pool hall on March 23, 2017, which was the basis for the search warrant. Smoots also sought to prohibit any evidence that he had one of the two marked bills allegedly used in the March 23 sale when he was arrested on March 24.

¶8. In response, the State represented that the CI would not testify at trial[1] and that no audio or video of the March 23 sale existed.[2] In addition, the State represented that the CI told officers that he bought cocaine from Smoots on March 23, but the State did not intend to offer any testimony to that effect. Officers would testify that the CI bought cocaine at the pool hall on March 23, but they would not identify the alleged seller. However, the State still argued that the prior sale was relevant and admissible to show "intent." To that end, the State

[1] The State represented that it did not want to identify the CI because an informant in a prior case against Smoots "disappeared and hadn't been seen since."

[2] According to the State, an attempted audio recording failed.

3

intended to offer evidence that Smoots had one of the marked bills used in the March 23 sale. In essence, the State hoped that the jury would infer from Smoots's possession of the bill that Smoots had sold cocaine on March 23, which the State argued was relevant to show that Smoots intended to distribute the cocaine found in the sewer cleanout on March 24.

¶9.    The trial court ultimately ruled that the State could offer evidence that Smoots possessed the marked bill when he was arrested on March 24 but could not offer hearsay testimony that the CI purchased cocaine from Smoots on March 23. The trial court also gave the jury the following limiting instruction:

> The Court instructs the jury that you have heard evidence that on an occasion other than the date charged in the indictment, a sale of a controlled substance occurred in the establishment owned and operated by the Defendant, Robert Smoots, [which] was the basis for the search warrant to be issued.
>
> You are instructed that the evidence of another wrong or crime is not to be considered by you as evidence that the Defendant committed the crime charged in the indictment, but may be considered by you only for the limited purpose of showing intent.
>
> You cannot and must not simply infer the Defendant acted in conformity with what has been alleged to have occurred to obtain the search warrant and that he is therefore guilty of the charge for which he is presently on trial.

¶10.    In its case-in-chief, the State called two of the officers involved in executing the search warrant and a chemist from the State Forensics Laboratory who testified that the cocaine found in the sewer cleanout weighed approximately 2.21 grams. After the State rested, Smoots moved for a directed verdict. The trial court denied Smoots's motion.

¶11.    The manager of the pool hall, Jasmine Cross, testified that Smoots leased the pool hall and also drove dump trucks and did construction work. Cross managed the pool hall for

4

Smoots, ran the bar, and handled all the money. She had worked there for four and a half years. Cross testified that she gave Smoots the cash receipts from the bar between 1:00 and 2:00 a.m. on March 24, 2017, after the bar closed for the night. She stated that the cash receipts consisted of "all kinds of bills," including twenty-dollar bills. On cross-examination, Cross testified that there was no cash register or accounting system in the pool hall, which also had a kitchen and served burgers, wings, et cetera. Cross kept the cash that she received and turned it over to Smoots at the end of the night or the next day. Cross also testified that the water in the pool hall's toilet stayed running all the time.

¶12. Demario testified that he drove dump trucks for Smoots and that he met Smoots at the pool hall on March 24, 2017, to pick up a paycheck. Demario testified that he sat down at a table in the main part of the pool hall with Smoots and Hodges. He testified that none of the three men got up from the table or flushed anything down the toilet while he was there. A few minutes later, law enforcement banged on the side door, which enters into the kitchen, and broke in through that door. Demario claimed that the officers never knocked or announced themselves at the front door to the pool hall. Demario also claimed that the toilet in the pool hall ran constantly.

¶13. At the close of the evidence, Smoots renewed his motion for a directed verdict. The trial court denied the motion. Following jury instructions and closing statements, the jury retired to deliberate. About an hour later, the jury advised the bailiff that it had reached a verdict. In open court, the jury foreperson stated that the jury had reached a verdict on both counts and handed the bailiff handwritten verdicts finding Smoots guilty on both counts.

However, when the jury was polled, one juror stated that the verdicts read in court were *not* his verdicts. The court then sent the jurors back to the jury room. Outside the presence of the jury, the court stated that no judgment could be entered because the verdicts were not unanimous. Smoots argued that a mistrial was required. The State argued that the court should give a *Sharplin* instruction,[3] but the court stated that such an instruction would be "a little unusual" since the jurors had not stated "that they couldn't reach a verdict."

¶14. While the court and counsel were still discussing how to proceed, the jury informed the bailiff that the juror who answered "no" when polled had "changed his mind" and agreed to the guilty verdicts. Smoots continued to insist that a mistrial was required, but the court decided to bring the jury back in. In open court, the court questioned that juror as follows:

| | |
|---|---|
| THE COURT: | All right. Sir, you are that individual who said, no, those two verdicts of guilty were not your verdict. Have you now since that time changed your mind? |
| JUROR: | Yes, sir. |
| THE COURT: | So are you telling me now that the verdict of guilty on Count I is your verdict? |
| JUROR: | Yes, sir. |
| THE COURT: | Are you also telling me that the verdict of guilty on Count III[4] also your verdict? |
| JUROR: | Yes, sir. |

---

[3] *See Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976) (approving a jury instruction that a trial judge may give upon being informed that the jury has been unable to reach a unanimous verdict).

[4] Count II of the indictment did not pertain to Smoots. It charged Demario only with possession of Hydrocodone. The State also nolle prosequied that charge against Demario.

The court then re-polled the entire jury to confirm that the guilty verdicts were the verdicts of each juror, and the court entered judgment on the verdicts.

¶15. The court sentenced Smoots to serve forty years in the custody of the Department of Corrections with ten years suspended and five years of post-release supervision for possession of cocaine with the intent to distribute within 1,500 feet of a church. The court sentenced Smoots to a concurrent term of two years for tampering with evidence. Smoots filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

**ANALYSIS**

¶16. On appeal, Smoots's appointed counsel argues that (1) the evidence was insufficient to support the convictions, (2) Smoots was unfairly prejudiced by the evidence of the prior drug sale and the marked bill, and (3) the conviction must be reversed because there is doubt that the verdict was unanimous. Smoots also filed a pro se brief that raises additional issues. We conclude that Smoots's convictions must be reversed and rendered due to the insufficiency of the evidence. Our holding on this issue renders all other issues moot.

¶17. When we address a challenge to the sufficiency of the evidence, all credible evidence of guilt must be accepted as true, and the State is entitled to all reasonable inferences that may be drawn therefrom. *Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss. 2018). "We examine the evidence in the light most favorable to the State, while keeping in mind the beyond-a-reasonable-doubt burden of proof . . . ." *Id.* "[T]he conviction must rest on evidence, not speculation or conjecture." *Pruitt v. State*, 289 So. 3d 1227, 1230 (¶12) (Miss.

7

Ct. App. 2020) (citing *Edwards v. State*, 469 So. 2d 68, 69-70 (Miss. 1985); *Sisk v. State*, 294 So. 2d 472, 475 (Miss. 1974)). We will reverse and render if the facts and inferences favor the defendant with such force that reasonable jurors could not find him guilty beyond a reasonable doubt. *Haynes*, 250 So. 3d at 1244 (¶6). However, we must affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Shelton v. State*, 214 So. 3d 250, 256 (¶29) (Miss. 2017)).

¶18. The relevant evidence in this case is relatively simple. When officers entered the pool hall, they found Smoots and two other men sitting at a table. The officers heard a toilet running and found about ten rocks of crack cocaine wrapped in toilet paper in the sewer cleanout outside. The State's evidence probably was sufficient for a rational juror to infer that *one of the three men* in the pool hall flushed the cocaine down the toilet just before the officers entered. But that is all it could prove. The evidence was not sufficient to prove beyond a reasonable doubt that *Smoots*—and not one of the other two men—was guilty of possessing and flushing the drugs.[5]

¶19. The State argues that the jury could find beyond a reasonable doubt that Smoots possessed and flushed the cocaine because he had a marked twenty-dollar bill from a prior drug deal in his pocket when he was arrested. However, the evidence of the marked bill supposedly was admitted only to show Smoots's "intent." It cannot prove that he possessed

---

[5] Although Smoots operated the pool hall, the premises was open to customers and was not in his "exclusive possession." Therefore, he was "entitled to acquittal, absent some competent evidence connecting him with the [cocaine]." *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978) ("Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband.").

or flushed the cocaine.

¶20.    Under Mississippi Rule of Evidence 404(b), "[e]vidence of prior involvement in the drug trade is admissible *to prove intent to distribute*." *Holland v. State*, 656 So. 2d 1192, 1196 (Miss. 1995) (emphasis added) (stating that such evidence must also "pass[] the [Rule] 403 filter and [be] accompanied by an instruction limiting its use to show intent"). Our Supreme Court explained that "[t]he intent to distribute" is what "separat[es] the crime of simple possession from the crime of possession with intent to distribute," and evidence of prior involvement in the sale of drugs is admissible to prove intent to distribute "because of the difficulty of proving subjective intent." *Id.* at 1197.[6] That is the theory under which evidence of the marked bill was admitted in this case, and the jury was instructed that the evidence could be considered only for that limited purpose. Thus, even if Smoots's possession of the marked bill permits an inference that he sold cocaine on March 23, 2017,[7] that is evidence only of his *intent to distribute*. The State was still required to provide some independent proof that Smoots did, in fact, possess and flush the cocaine recovered from the sewer cleanout on March 24, 2017.

---

[6] In *Holland*, the defendant was arrested with a rock of crack cocaine, and he freely admitted that he possessed it. *Id.* at 1195. Evidence that he had sold drugs in the past was admitted to prove his intent to distribute, although the Supreme Court ultimately held that such evidence was insufficient to prove intent to distribute on the facts of that case, *id.* at 1196-97, and Holland's conviction was reversed and rendered as a conviction for simple possession, *id.* at 1198-99.

[7] As discussed above, Cross testified that she gave Smoots the pool hall's cash receipts from March 23 when the pool hall closed around 1:00 or 2:00 a.m. on March 24. Smoots's attorney argued that the marked bill was among the cash that Smoots received from Cross.

9

¶21.    There is no evidence that Smoots, as opposed to Demario or Hodges, possessed and flushed the cocaine found outside the pool hall.  The evidence permitted only an inference that one of the three men was guilty, and the jury could only guess as to the guilty party.  A criminal conviction cannot rest on such "substantial guesswork, speculation and conjecture." *Edwards*, 469 So. 2d at 69; *see also id.* at 71 (holding that proof that the defendant "*might* have" committed a crime is insufficient to support a conviction); *Sisk*, 294 So. 2d at 475 ("[C]onviction in criminal cases must rest upon finite evidence and not probabilities or surmise.").  Therefore, the evidence was insufficient to convict Smoots of possession of the cocaine with the intent to distribute and tampering with evidence.

### CONCLUSION

¶22.    The evidence was insufficient to convict Smoots of either possession with the intent to distribute or tampering with evidence.  Therefore, we must reverse and render Smoots's convictions.  Our holding on this issue renders all remaining issues moot.

¶23.    **REVERSED AND RENDERED.**

**BARNES, C.J., WESTBROOKS, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.   GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND LAWRENCE, J.**

**GREENLEE, J., DISSENTING:**

¶24.    Because I believe that sufficient evidence existed to support the jury's verdicts, I respectfully dissent.

¶25.    At trial, the State presented evidence that on March 23, 2017, a confidential informant used forty dollars of marked money to purchase crack cocaine inside a pool hall operated by

10

Robert Smoots in Canton, Mississippi. The following afternoon, a search warrant was executed at the location. A team of law-enforcement officers approached the front door of the pool hall, and another team went to the side door. The officers continuously beat on the doors and issued loud verbal commands, but there was no response from inside. Finally, the officers kicked open the side door and unlocked the front door.

¶26. The officers found Smoots, Demario Smoots (Smoots's nephew), and Jerome Hodges sitting at a table and heard a toilet running inside. The officers subsequently found approximately ten pieces, or 2.21 grams, of cocaine wrapped in toilet paper in a sewer pipe outside. An agent went back inside, flushed the toilet that had been running, and water came out of the pipe where the cocaine was found.

¶27. In addition to the cocaine, the officers recovered some of the marked money that had been used to purchase crack cocaine at the pool hall the day before. The serial number on a twenty-dollar bill found in Smoots's pocket matched the serial number of a twenty-dollar bill that was used during the controlled drug deal. Smoots was the only person inside the pool hall who had marked money in his possession. Finally, the State presented evidence that the pool hall was located within 1,500 feet of Liberty Baptist Church.

¶28. After considering the evidence presented at trial, the jury found Smoots guilty of Count I, possession of more than two grams but less than ten grams of cocaine with intent to sell, distribute, or transfer within 1,500 feet of Liberty Baptist Church, and Count III, tampering with physical evidence.

¶29. When reviewing a challenge to the sufficiency of the evidence, "the relevant question

11

is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Reynolds v. State*, 227 So. 3d 428, 436 (¶32) (Miss. Ct. App. 2017) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)). "The issue on appeal is not whether the reviewing court would have found the defendant guilty; rather, the conviction must be affirmed if there was sufficient evidence for 'any rational trier of fact' to have rendered a guilty verdict." *Id*.

¶30. "To support a conviction for possession of a controlled substance, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *O'Donnell v. State*, 173 So. 3d 907, 916 (¶22) (Miss. Ct. App. 2015) (quoting *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011)). Because Smoots was charged with possession with intent, the State also had to prove that he intended to sell, transfer, or distribute the controlled substance. Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2018).

¶31. "Possession of a controlled substance may be actual or constructive." *O'Donnell*, 173 So. 3d at 917 (¶22) (quoting *Johnson v. State*, 81 So. 3d 1020, 1023 (¶7) (Miss. 2011)). "To establish constructive possession, the [contraband] merely has to be found near the defendant 'in a place over which the defendant exercises dominion or control.'" *Id*. (quoting *Glidden*, 74 So. 3d at 348 (¶20)). But when contraband is found on premises not owned by the defendant, "the State must show other incriminating circumstances, in addition to proximity,

12

in order to prove constructive possession." *Id*. (quoting *Cheatham v. State*, 12 So. 3d 598, 601 (¶7) (Miss. Ct. App. 2009)).

¶32. At trial, it was established that Smoots leased the space where the pool hall was located and that he operated the pool hall. Additionally, the State presented evidence that forty dollars of marked money was used to purchase drugs at Smoots's pool hall on March 23, 2017. And during the execution of the search warrant the next day, some of the marked money was found in Smoots's possession. Smoots was the only person in the pool hall who was in possession of any marked money. The officers also heard a toilet running when they entered the building and subsequently found cocaine in the building's sewer pipe. This was sufficient evidence for a jury to find that Smoots constructively possessed the cocaine.

¶33. With respect to intent, this Court has held that "[i]ntent to sell or distribute contraband may be established by inference from circumstantial evidence." *Campbell v. State*, 118 So. 3d 598, 604 (¶15) (Miss. Ct. App. 2012). "[I]ntent is a question of fact to be gleaned by the jury from the facts shown in each case." *Id*. Furthermore, "criminal intent may be shown by surrounding circumstances." *Id*. At trial, the State produced evidence that Smoots operated the pool hall, which was the location of at least one prior drug sale. The State also presented evidence that during the execution of the search warrant, approximately ten individual rocks of cocaine were found in the building's sewer pipe. And as discussed, Smoots was in possession of some of the marked money from the controlled drug deal that occurred the day before. Giving the State the benefit of all favorable inferences reasonably drawn from the evidence, there was sufficient evidence for a jury to find that Smoots

13

intended to sell, transfer, or distribute the controlled substance. *Pickett v. State*, 252 So. 3d 40, 49 (¶27) (Miss. Ct. App. 2018).

¶34. As to Count III, Smoots claims that because he did not possess the cocaine, the State could not prove that he tampered with physical evidence. However, as discussed, the State presented sufficient proof that Smoots constructively possessed the cocaine. Furthermore, two officers testified that they heard a toilet running inside the building, and then cocaine was found in the building's sewer pipe.

¶35. After viewing the evidence in the light most favorable to the prosecution, I believe that any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Therefore, I dissent.

**CARLTON, P.J., AND LAWRENCE, J., JOIN THIS OPINION.**