MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. James Roy Grimes appeals his conviction in the Circuit Court of Washington County of statutory rape and sentence of twenty years in the custody of the Mississippi Department of Corrections. Grimes argues that the trial court erred in admitting hearsay testimony under the “tender years” exception and that the jury’s verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On January 4, 2004, ten-year-old A.B. (alternatively, “the victim”) and her friend X.Y.
 
 [1]
 
 rode to church on the church bus as was their normal routine. Once they arrived, A.B. tried to tell her Sunday school teacher, Paulette Cooper, that she needed to tell her something; however, Cooper was busy with the other children and “kept putting her off.” Finally, A.B. passed Cooper a note which read, “Ms. Paulette I have to talk to you about James and what he did to us when my mama [sic] went to work and I just need to talk to someone. Please can you.” A.B. and Coo
 
 *953
 
 per went to the bathroom to discuss the note. Cooper testified as follows about that conversation:
 

 A: ... I stopped immediately and I just kind of held my breath for a second. I said, “[A.B.], what do you have to tell me?” And she proceeded to tell me what happened to her.
 

 Q: Okay. What exactly did she tell you?
 

 A: She said, “Ms. Paulette” — The look on her face said more than any words she could have said to me. She said, “Ms. Paulette” — James had touched her where he shouldn’t be touching her. I said, “Exactly what did he do, [A.B.]?” She said, “He had come out of the shower without any clothes on, Ms. Paulette. He threw me down on the bed, and he held my hands down tight.” And said, “He went into the door next to the bed and pulled something out and put it on his private area and then he — ” she said, “My stomach hurt me this time, Ms. Paulette.” She said — she started rubbing across her stomach. She said, “It hurt me more than it ever hurt me before.” And I said, “Ever hurt you before, [A.B.]? Are you trying to tell me this had happened to you before?” She said, “Yes, ma’am.” She said, “It’s happened before, and it happens when my mother goes to work at night.” And she said that he had stuck his penis in her.
 

 Cooper told A.B. that they had to tell someone and called one of the deacons in to talk with A.B. Deacon Glenn Cleveland came into the bathroom to talk to A.B., while Cooper stood in the doorway of the room. A.B. relayed the same information to Deacon Cleveland.
 

 ¶ 3. The sheriffs department and A.B.’s mother were called. A.B. spoke with Evan Smith of the Washington County Sheriffs Department. He testified about their conversation as follows:
 

 [A.B.] stated to me that her and her mother were living with James Grimes ... and that after her mother would go to work, James Grimes would play with her breasts and her private area or vagina. And [A.B.] further stated to me that James would lay her down while he would lick her in her private areas, and he would also make [A.B.] touch his penis to make it hard. And the next things that [A.B.] stated to me was that she was very scared because James stated that he would beat her up if she told anybody what was going on or what had happened.
 

 ¶ 4. A.B. was then taken to the hospital to be examined. Although the rape kit was negative for semen, Dr. Marily McLeod from Delta Regional Medical Center examined the victim and testified that the victim had a ruptured hymen and an open vaginal vault. Dr. McLeod explained that an open vaginal vault indicated multiple occurrences of sexual activity and that it was extremely unusual in a ten-year-old. Dr. McLeod also diagnosed the victim as having gardnerella, an infection normally seen in sexually active women. Dr. McLeod further testified that she did not need to use a virginal speculum while examining the victim. She was able to use a regular adult-sized speculum, and it caused the victim no pain.
 

 ¶ 5. A few days later Officer Percy Miles of the Washington County Sheriffs Department took another statement from the victim. The victim also spoke with Dan-ette Cook from the Mississippi Department of Human Services. A.B. told her that she was abused by Grimes and specifically stated that “he used some pink stuff sometimes on her or he would use spit, and she also said that he would put his private part into her private part.” She
 
 *954
 
 further relayed to Cook that “it hurted [sic]” and that “it would happen at least once a day when her mother was at work.” Cook also testified to the following:
 

 [A.B.] mentioned on the night before she and her friend were spending the night at her home and he came in and tried to, I guess sexually abuse her again, he pulled her pants — leg out of her pants, and he also tried to attack the friend but the friend fought him off.
 

 ¶ 6. At trial X.Y., the victim’s friend from church, testified that she spent the night at A.B.’s house on January 3, 2004, the night before they attended church together. X.Y. stated that after A.B.’s mother went to work that night, Grimes tried to kiss her, pull down her pants, and pull up her shirt while the victim was in the bathroom. As A.B. returned, X.Y. began to push Grimes away and told him to leave her alone. A.B. helped her fight him off and then sat on the couch beside X.Y. Grimes then tried to pull down A.B.’s pants, pull up her shirt, and kiss her. A.B. resisted, and the two girls retreated to her room. Grimes did not pursue and left them alone for the rest of the night. X.Y. then told A.B. that she had to tell someone about what had been happening.
 

 ¶ 7. Grimes was tried and convicted of statutory rape. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections.
 

 DISCUSSION
 

 1. Whether the trial court erred in admitting hearsay testimony un.der the “tender years” exception.
 

 ¶ 8. Grimes argues on appeal that the trial court erred in admitting the hearsay testimony of the victim. Rule 803(25) of the Mississippi Rules of Evidence, also known as the “tender years” exception, provides the following:
 

 A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provided substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness....
 

 ¶ 9. There is a rebuttable presumption that a child under the age of twelve is of tender years.
 
 Allred v. State,
 
 908 So.2d 889, 892(¶ 11) (Miss.Ct.App.2005). On January 4, 2004, at the time A.B. made the statements, she was ten years old. Grimes does not contest the trial court’s finding that A.B. was of tender years, and the testimony at the Rule 803(25) hearing was unanimous that A.B. was of normal maturity for a child of her age.
 

 ¶ 10. The inquiry, however, does not end there. Once the court finds that a declarant is of tender years, it must then determine whether the child’s statements possess “substantial indicia of reliability.” M.R.E. 803(25). The comment to Rule 803(25) recites several factors, commonly called the
 
 Wright
 
 factors, that the trial court may consider:
 

 (1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the
 
 *955
 
 statement; and (12) whether the declar-ant’s age, knowledge, and experience make it unlikely that the declarant fabricated.
 

 See also Idaho v. Wright,
 
 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). However, the
 
 Wright
 
 factors are not an exhaustive list, and “no mechanical test is available.”
 
 Withers v. State,
 
 907 So.2d 342, 350(¶ 23) (Miss.2005) (quoting
 
 Eakes v. State,
 
 665 So.2d 852, 865 (Miss. 1995)). Instead, “the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.”
 
 Bell v. State,
 
 797 So.2d 945, 948(¶ 13) (Miss.2001) (quoting
 
 Wright,
 
 497 U.S. at 822, 110 S.Ct. 3139).
 

 ¶ 11. “The standard of review on appeal from evidentiary rulings is prescribed by Rule 103(a) of the Mississippi Rules of Evidence, which states that ‘error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.’ ”
 
 Withers,
 
 907 So.2d at 345(¶ 7) (quoting M.R.E. 103(a)). The standard of review is abuse of discretion, which may be found only where the trial court’s decision is without substantial credible evidence, or “the reviewing court has a definite and firm conviction that the court below committed a clear error of judgment and [in the] conclusion it reached upon a weighing of the relevant factors.”
 
 Id.
 
 (internal quotations omitted).
 

 ¶ 12. The trial court made findings of fact, on the record, regarding each of the
 
 Wright
 
 factors. Grimes now argues on appeal that the trial court abused its discretion in finding, when considering the evidence as a whole, that A.B.’s statements contained substantial indicia of reliability. In particular, Grimes argues that A.B. “had already established herself as an unworthy declarant” because she admitted to falsely accusing Grimes of sexual abuse in the past. Grimes also cites to several apparent inconsistencies in the victim’s recitations of when the abuse began, its frequency, whether she was afraid of Grimes, and whether Grimes had intercourse with her and X.Y. on the night of January 3, 2004. We shall address each argument in detail.
 

 ¶ 13. First, Grimes argues that A.B. was an “unworthy declarant” because she had falsely accused Grimes of raping her approximately one year before the incidents leading to his conviction. After A.B. made the false accusation, she was taken by her father to a hospital. When the examination indicated that she had not been raped, A.B. admitted that she had fabricated the story. However, at the Rule 803(25) hearing, A.B. explained that she understood the difference between telling the truth and telling a lie. She admitted that she had lied the first time she accused Grimes, but explained that she did so because she “had a feeling something was going to happen to [her] and her sisters” and that she wanted her parents to stay together. A.B. further testified that the January 4, 2004, accusation was truthful. She also denied having a motive to lie, explaining that she no longer wanted her parents to reunite.
 

 ¶ 14. Next, Grimes cites to what he asserts are inconsistencies in A.B.’s recitations of when the abuse began and the frequency at which it occurred. While we do find some apparent inconsistencies, A.B. consistently stated that the abuse began after her sisters left on October 31, 2003, and that over time it escalated from inappropriate touching to intercourse.
 
 [2]
 
 
 *956
 
 Having endured escalating abuse, it is understandable that A.B. was inconsistent when answering questions posed as variations of “When did it start?” Likewise, that she varied when pressed for specific dates of when various sexual acts occurred is of little consequence. Grimes’s assertion that A.B. “testified that [Grimes] never threatened her, however, she was afraid that he might harm her” is simply without merit as A.B. described numerous instances of verbal and physical abuse.
 

 ¶ 15. Finally, Grimes asserts that A.B.’s account of what occurred on the night of January 3, 2004, has been inconsistent. On our review of the record, A.B. consistently stated that on that night Grimes only inappropriately touched her and X.Y., with a single exception. At the Rule 803(25) hearing, on direct examination by the State, A.B. stated that Grimes inappropriately touched her and X.Y., but he stopped after the pair resisted his advances. However, when asked on cross-examination whether Grimes “[had] intercourse” with her that night, A.B. answered in the affirmative. Likewise, she answered in the affirmative when asked whether “[Grimes] put his penis inside of [X.Y.].”
 
 [3]
 

 ¶ 16. The trial court weighed its concerns with A.B.’s credibility against the other circumstances, closely following the factors outlined in
 
 Wright,
 
 and found substantial indicia of reliability in the victim’s hearsay statements. It is apparent from our review of the record that the trial court did have substantial, credible evidence upon which to make this finding, and we cannot state with a definite and firm conviction that it reached the wrong result. Accordingly, the trial court did not abuse its discretion in allowing the aforementioned hearsay testimony. This issue is without merit.
 

 2. Whether the jury’s verdict was against the overwhelming weight of the evidence.
 

 ¶ 17. In Bush
 
 v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005), the supreme court discussed appellate review of the weight of the evidence supporting a jury’s verdict:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 (Citations and internal quotations omitted).
 

 ¶ 18. While Grimes raises some legitimate concerns about A.B.’s credibility, her testimony was corroborated by X.Y.’s testimony and compelling medical evidence. On our review of the record, viewing the
 
 *957
 
 above evidence in a light most favorable to the verdict, we find that the jury’s verdict was not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., NOT PARTICIPATING.
 

 [1]
 

 . To protect the anonymity of minor victims of sexual abuse, we use fictitious initials to represent their names.
 

 [2]
 

 . A.B. testified that October 31, 2003, was the date that her sisters moved out of the home her mother shared with Grimes. She testified that she could have elected to live with her
 
 *956
 
 father as well, but she had decided to stay with her mother.
 

 [3]
 

 . At trial, however, A.B. again testified that Grimes did not have intercourse with her or X.Y. that night. When impeached with her prior answers, she explained that she had not understood what was being asked.