LEE, C.J.,
for the Court:
FACTS AND PROCEDURAL HISTORY
¶ 1. On July 4, 2009, six-year-old Far- *1081 rah[1] spent the night at her grandmother’s house in Leland, Mississippi. When Far-rah’s mother picked her up the next day, Farrah told her that Dennis Brown had sexually assaulted her and had shown her sexually explicit photographs. Brown is Farrah’s uncle and was living with his mother, Farrah’s grandmother, at the time of the incident. Farrah was examined, and a rape kit was gathered at the Delta Regional Medical Center. The DNA from the rape kit matched Brown. Also, Far-rah was interviewed at the Family Resource Center in Tupelo. During the interview, Farrah stated that Brown had touched her “between her legs” with his hands and his penis and that Brown had shown her pictures of nude adults.
¶ 2. After a jury trial on August 17, 2011, in Washington County Circuit Court, Brown was convicted of fondling under Mississippi Code Annotated section 97-5-23(1) (Rev.2006) and dissemination of sexually oriented material under Mississippi Code Annotated section 97-5-27 (Rev. 2006). Brown was sentenced as a habitual offender to life without parole for the fondling count and six months for the dissemination count. The sentences were to be served concurrently.
¶ 3. Brown now appeals, arguing the trial court erred in: (1) denying his motion to suppress evidence seized from the search of his bedroom; (2) admitting evidence under the tender-years hearsay exception; and (3) sentencing him as a habitual offender.
DISCUSSION
I. MOTION TO SUPPRESS
¶ 4. Kimberly Willis, Brown’s sister, asked Investigator Dondi Gibbs with the Washington County Sheriffs Office to come to the house where the incident occurred. The house belonged to Willis and Brown’s mother, Eva Sylvester. Investigator Gibbs searched Brown’s bedroom in the house and seized several pornographic photographs.
115. Brown argues that his motion to suppress the evidence from the search should have been granted because Willis did not have authority to consent to the search. Brown claims that he was prejudiced by the introduction of the pornographic photographs in that, even though the pornography involved a separate misdemeanor offense, the photographs corroborated the testimony of the State’s witnesses.
¶ 6. The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee the right to be free from unreasonable searches and seizures. Additionally, “[t]his right is protected by the warrant clauses of both provisions, which require the government to obtain a warrant based on probable cause before a search is conducted.” Gazaway v. State, 708 So.2d 1385, 1387 (¶ 8) (Miss.Ct.App.1998). However, this right is not absolute; certain exceptions to the warrant requirement have been established. “Chief among these exceptions is the one allowing for consent to a search.” Id. at 1388 (¶ 9). Consent to search is not limited to the owner of the property. A third party can give consent to search if that party possesses “common authority, mutual use[,] and joint control over property not in the exclusive control or possession of the defendant and where the defendant had no reasonable expectation of privacy.” Brown v. State, 358 So.2d 1004, 1005 (Miss.1978).
*1082 ¶ 7. When this Court reviews a motion to suppress, “we must determine whether the trial court’s findings, considering the totality of the circumstances, are supported by substantial credible evidence. Where supported by substantial credible evidence, this Court shall not disturb those findings.” Moore v. State, 933 So.2d 910, 914 (¶ 9) (Miss.2006) (internal citations omitted). And this Court reviews the admission or exclusion of evidence for abuse of discretion. Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (¶ 12) (Miss.1999).
¶ 8. At the hearing on the motion to suppress, Brown stated that his mother had not given Willis consent to search. However, Brown did not offer any evidence that his mother did not consent to the search in his motion to suppress or in his argument at the hearing. In its response to Brown’s motion to suppress, the State asserted that Willis was “the daughter of the home owner[,] and [Investigator] Gibbs was given verbal consent to search the [residence] ... by the owner of the house, Eva Sylvester.” Eva Sylvester was unavailable to testify.
¶ 9. Brown failed to present any credible evidence or argument that consent was not given. The trial court relied on the credible evidence before it and did not abuse its discretion in denying the motion to suppress and admitting the photographs. This issue is without merit.
II. TENDER-YEARS EXCEPTION
¶ 10. Mississippi Rule of Evidence 803(25) establishes an exception to the hearsay rule if the declarant is of tender years. Under the tender-years exception,
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
Brown contends that Farrah’s statements during the interview were hearsay and should not have fallen under the exception, because “reliability was missing from the facts presented.” To support that contention, Brown asserts that the interviewer asked leading questions and that Farrah had possibly been coached.
¶ 11. This Court reviews the trial court’s “admission or exclusion of evidence for abuse of discretion.” Hobgood v. State, 926 So.2d 847, 852 (¶ 11) (Miss.2006). Additionally, [t]here is a rebuttable presumption that a child under the age of twelve is of tender years.” Grimes v. State, 1 So.3d 951, 954 (¶ 9) (Miss.Ct.App.2009).
¶ 12. Once the trial court determines that the child is of tender years, the court must determine if the child’s statements contain “indicia of reliability.” The trial court may look to the Wright factors to determine the reliability of the statements. These factors include:
(1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the statements were made; (9) the cred *1083 ibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declar-ant’s age, knowledge, and experience make it unlikely that the declarant fabricated.
Grimes, 1 So.3d at 954-55 (¶ 10); see also Idaho v. Wright, 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).
¶ 13. The trial court addressed each of the Wright factors, and specifically noted that because of Farrah’s young age, as well as the spontaneity and consistency of her statements, her statements were reliable. There is nothing in the record to show that the trial court abused its discretion in admitting Farrah’s statements under the tender-years exception. This issue is without merit.
III. HABITUAL-OFFENDER STATUS
¶ 14. Brown was sentenced as a habitual offender. The record is clear that Brown had two prior convictions arising out of separate charges for which he served at least one year and that one of those convictions was for a violent crime, thereby satisfying the parameters of the violent habitual-offender statute, Mississippi Code Annotated section 99-19-83 (Rev. 2007). These September 11, 2006 prior convictions were for failure to register as a sex offender,[2] for which he was sentenced to two years of post-release supervision, and aggravated assault, for which he was sentenced to five years of post-release supervision. Brown does not take issue with the revocation of his post-release supervision for his aggravated-assault conviction or with this sentence serving as a valid conviction for habitual offender status.
¶ 15. Brown asserts that his sentence should not have been enhanced, because the order revoking his post-release supervision for his failure-to-register-as-a-sex-offender conviction was untimely. According to Brown, the revocation of the post-release supervision occurred on August 3, 2009, which was after the two-year period of suspension ended. Thus, Brown makes the tenuous argument that his revocation was never valid, making his time served invalid, and thereby invalidating one of his prior convictions on which the State relied to prove his habitual-offender status.
¶ 16. On August 19, 2008, roughly one month before the end of his post-release supervision for his failure-to-register-as-a-sex-offender conviction, Brown violated the terms of his post-release supervision and was sentenced to one year in the custody of the Mississippi Department of Corrections (“MDOC”). On June 2, 2009, Brown was released from MDOC with the condition that he would serve one year of post-release supervision. Soon after his release, Brown violated his post-release supervision again, and on August 3, 2009, he was sentenced to one year in the custody of MDOC.
¶ 17. The record is clear that the August 19, 2008 revocation, which Brown makes no mention of in his brief, occurred prior to the expiration of the two-year post-release-supervision period. Thus, the revocation was timely, making the subsequent one year served valid. Additionally, the August 3, 2009 revocation was timely, occurring within months of his release. And the subsequent one year Brown *1084 served for the second revocation was also valid. Since both revocations were timely, the time served was valid, and the conviction which the State relied to prove the habitual-offender status was proper. This issue is without merit.
¶ 18. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, FONDLING, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND COUNT IV, DISSEMINATING SEXUALLY ORIENTED MATERIAL, AND SENTENCE OF SIX MONTHS, WITH BOTH SENTENCES TO BE SERVED CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. JAMES, J., NOT PARTICIPATING.

. The victim’s name has been changed to protect her identity.

. Brown was convicted in 1987 of attempted rape and was required to register as a sex offender.