# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00033-COA

**ABDULKHALIQ MOHAMMED MURSHID**
**A/K/A ANDY**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

DATE OF JUDGMENT:               11/25/2019
TRIAL JUDGE:                    HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED:      LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         P. SHAWN HARRIS
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: META S. COPELAND

DISTRICT ATTORNEY:              KASSIE ANN COLEMAN
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 04/20/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     On July 28, 2016, a Lauderdale County grand jury indicted Abdulkhaliq Murshid for the following: Count I, possession with intent to sell counterfeit goods; Count II, possession with intent to sell more than one kilogram of synthetic cannabinoids (spice); Counts III-V, possession with intent to sell recordings without the display of required information; and Count VI, conspiracy to sell spice. On May 29, 2019, the State reindicted Murshid. The 2019 indictment contained identical charges except with regard to Count II, which provided the specific net weight—3,419.16 grams—of spice that law enforcement had seized at the time of Murshid's arrest. After Murshid's reindictment in 2019, the State dismissed the 2016

indictment against him.

¶2.     Following a jury trial on the 2019 indictment, the Lauderdale County Circuit Court entered a directed verdict as to Count VI and allowed the State to amend Count II of Murshid's indictment to conform to the trial evidence.  As amended, Count II charged Murshid with possession of more than thirty grams but less than one kilogram of spice with the intent to sell.  A Lauderdale County Circuit Court jury convicted Murshid of Counts I-V. The circuit court then sentenced Murshid to serve three years in the custody of the Mississippi Department of Corrections (MDOC) for Count I and to serve a consecutive five-year sentence in MDOC's custody for Count II.  The circuit court also fined Murshid a total of $35,000: $20,000 for Count II and $5,000 for each of the convictions in Counts III, IV, and V.

¶3.     On appeal, Murshid argues that the circuit court erroneously denied (1) his motion to suppress evidence; (2) his motion to dismiss; (3) his motion for a mistrial; and (4) his motion for a directed verdict.  Finding no error, we affirm the circuit court's judgment.

**FACTS**

¶4.     At the time of his arrest, Murshid owned and operated multiple convenience stores in Meridian, Mississippi.  On July 9, 2015, agents from the Mississippi Bureau of Narcotics (MBN) executed search warrants at two of Murshid's stores for evidence related to the sale of spice.  The MBN agents obtained a search warrant for Murshid's Meridian Tobacco store located on 8th Street in Meridian after confidential informants purchased spice from the store

on two separate dates. The MBN agents obtained a second search warrant for Murshid's Grey Cloud Discount Tobacco store located on Highway 45 in Meridian after a store employee showed the agents an inventory of spice labeled as incense.

¶5. At trial, Murshid moved to suppress the evidence seized as a result of the search warrant executed at the Grey Cloud store. Murshid asserted that the agents had obtained the warrant after illegally searching the store. During the hearing on Murshid's motion to suppress, MBN Agent Will Peterson testified that he participated in the investigation into Murshid and that he applied for and obtained the warrant to search the Grey Cloud store. Agent Peterson stated that two other agents initially entered the Grey Cloud store on July 9, 2015, with the knowledge that an arrest warrant had been issued for Murshid and with the belief that Murshid might be inside that particular store location. The two agents wore clothing that clearly identified them as law-enforcement officers. Upon entering the Grey Cloud store, the agents made contact with an employee, who informed them that Murshid was not there. In response to the agents' questions, the employee indicated that the store contained no illegal items and did not sell spice because the substance was illegal in Mississippi. When asked whether the store sold incense, however, the employee responded affirmatively. The employee opened a drawer behind the counter and invited the two agents to walk behind the counter to view the drawer's contents. The open drawer contained numerous foil packages with assorted markings, and the agents recognized that the packages were consistent with the type used to store and distribute spice. The markings indicated that

3

the packages contained incense, and Agent Peterson testified that incense and potpourri were terms often used to refer to spice. Based on their belief that the packages in plain view inside the open drawer contained contraband, the two agents contacted Agent Peterson. After confirming the basis for the agents' belief that the Grey Cloud store contained spice, Agent Peterson applied for a search warrant.

¶6.    After considering the parties' arguments and evidence, the circuit court concluded that the two MBN agents acted in good faith when they initially entered the Grey Cloud store and asked the employee whether Murshid was present. The circuit court found that the agents continued to act in good faith as they questioned the employee about whether the store sold any illegal items. The circuit court also found that the employee had invited the agents behind the counter to view the incense inside the open drawer and that probable cause existed for the agents' belief that the foil packages they observed in plain view contained spice. The circuit court further found that the agents' good-faith conduct continued as they secured the store and applied for a search warrant. As a result of these findings, the circuit court denied Murshid's motion to suppress the results of the search warrant executed at the Grey Cloud store.

¶7.    Agent David Creel, who worked for MBN at the time of Murshid's arrest, executed the search warrant for Murshid's Meridian Tobacco store. Agent Creel testified that law-enforcement officers arrested Murshid after they seized counterfeit goods, $1,700 in cash, ledgers, multiple firearms, digital scales, and loose and packaged material that appeared to

4

be synthetic cannabinoids.

¶8.     On May 29, 2019, the State reindicted Murshid.  The 2019 indictment contained identical charges except with respect to Count II, which provided that law enforcement had seized exactly 3,419.16 grams of spice from the Meridian Tobacco store.  On August 1, 2019, Murshid moved to dismiss the charges against him on the basis that the new indictment violated both his constitutional right and statutory right to a speedy trial.  After thoroughly analyzing Murshid's speedy-trial claims and ultimately concluding that they lacked merit, the circuit court denied Murshid's motion to dismiss.

¶9.     On November 19, 2019, Murshid moved to prevent the State from presenting evidence of his alleged prior bad acts.  Specifically, Murshid sought to prevent the State from introducing testimony about the following: (1) a 2013 charge against him, which was later dismissed, for the possession of synthetic cannabinoids, and (2) a video recording that purportedly showed he was present while another person sold contraband.  Following a hearing, the circuit court found that the prejudicial effect of the State's proffered evidence outweighed any probative value.  The circuit court therefore granted Murshid's motion to exclude the evidence of his alleged prior bad acts unless the defense opened the door to such evidence during the trial.  When the State sought clarification as to whether the circuit court's ruling to exclude the evidence included testimony about Murshid's interview statements to law-enforcement officers, the circuit court explained that its ruling related to "the interrogation by the law[-]enforcement officers in which they . . . stated that they saw a

5

videotape in which he [(Murshid)] was . . . present when there was an illegal sale."

¶10.   At trial, the State asked Agent Creel about his participation in Murshid's arrest and subsequent interview.  Agent Creel testified that Murshid signed a waiver of his *Miranda*[1] rights and provided a statement to Agent Creel.  During the interview, Murshid denied selling spice.  Agent Creel stated that Murshid said his wife Susan Murshid began operating the Meridian Tobacco store after the United States Drug Enforcement Agency (DEA) arrested Murshid in 2013.  Murshid's attorney immediately objected to Agent Creel's testimony about the 2013 arrest and moved for a mistrial.  The circuit court sustained the defense's objection but denied the mistrial motion.

¶11.   When questioning resumed, Agent Creel testified that Murshid claimed Susan had purchased the spice from a company in Florida, which the Murshids had verified with the Florida Secretary of State's Office was a legal business.  Murshid told Agent Creel that he then purchased the already prepackaged substance from Susan to sell at the Grey Cloud store.  According to Murshid, he and Susan had asked the Florida seller to test the spice to ensure that it was legal for them to sell.  Agent Creel testified, however, that even if the Florida company had told the Murshids they could legally sell the spice, such assurances did not make the sale of the substance legal in Mississippi.

¶12.   At trial, Susan testified that Murshid owned and operated several convenience-store locations but that she alone managed the Meridian Tobacco store.  Susan acknowledged that

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Murshid paid the taxes, bills, and rent for the Meridian Tobacco store, but she stated that she oversaw all business aspects of the store, including the purchase and sale of all inventory. Susan admitted, however, that Murshid essentially held the "purse strings" because she gave him the store's proceeds, and he funded the purchase of the store's merchandise. Although Murshid was present at the Meridian Tobacco store when the MBN agents executed their search warrant, Susan testified that Murshid usually only checked in at the store about twice a week. Susan maintained she was unaware at the time of the search and seizure that she had purchased illegal products that contained synthetic cannabinoids. Based on the information she had received from the Florida company that sold the product, Susan claimed she had believed she could legally sell the products in Mississippi.

¶13. Susan further testified that she had purchased the counterfeit purses and wallets seized from the Meridian Tobacco store without Murshid's knowledge or participation. Susan stated that she believed the products were legal when she purchased them, and she maintained that Murshid had no involvement in selling any of the products at the Meridian Tobacco store. Although she acknowledged that the MBN agents had seized some of the spice-containing items from the Grey Cloud store, Susan claimed that her son-in-law had shipped those items directly to the Grey Cloud store rather than to the Meridian Tobacco store. Susan denied that Murshid had ever purchased any of the spice-containing items from her so that he could then sell the products at the Grey Cloud store.

¶14. Agent Peterson testified that he executed the search warrant for Murshid's Grey Cloud

7

store. As a result of the search, MBN agents seized a ledger, two firearms, foil packages believed to contain synthetic cannabinoids, and approximately $227,000 in cash. Agent Peterson testified that the foil packages with the suspected synthetic cannabinoids were transported to the Mississippi Forensics Laboratory for analysis.

¶15. Forensic scientist Keith McMann, who worked at the forensics laboratory and specialized in drug analysis, reviewed the test results conducted on the suspected drug items seized from Murshid's two convenience stores. McMann testified that the total net weight of the tested substance amounted to 650.08 grams—536.08 grams from the Meridian Tobacco store and 114 grams from the Grey Cloud store. McMann confirmed that the test results showed the analyzed substances contained spice.

¶16. Investigator Leland McDivitt with the Mississippi Attorney General's Office testified that he participated in the MBN's investigation into Murshid. Investigator McDivitt met the MBN agents at the Meridian Tobacco store on the day they executed the search warrant. Upon entering the store, Investigator McDivitt observed in plain sight a counterfeit Louis Vuitton wallet and multiple counterfeit Michael Kors purses and wallets for sale. Investigator McDivitt testified that although some of the counterfeit items were in a back storage room, one counterfeit item was on display inside a glass case by the cash register, and several other counterfeit items were displayed in the store's aisles. According to Investigator McDivitt's calculations, the aggregate retail value of the purses and wallets, had they been genuine, would have totaled about $5,426. After helping with the search of the Meridian

8

Tobacco store, Investigator McDivitt went to the Grey Cloud store to assist the MBN agents there. While at the Grey Cloud store, Investigator McDivitt observed three counterfeit CDs and/or DVDs for sale in plain sight.

¶17. After Murshid had been arrested and advised of his *Miranda* rights, Investigator McDivitt questioned him about the counterfeit purses and wallets seized from the Meridian Tobacco store. Murshid did not deny that he owned the items. He also did not feign ignorance as to their presence within his store. Instead, Murshid told Investigator McDivitt that he had obtained the majority of the counterfeit purses and wallets from a business in Jackson, Mississippi.

¶18. Because Count II of the indictment provided that law enforcement had seized a total net weight of 3,419.16 grams of spice at the time of Murshid's arrest, the State moved to amend Count II to conform with the trial evidence showing that law enforcement had actually seized between thirty grams and one kilogram of spice. The circuit court allowed the amendment, and as amended, Count II provided that Murshid possessed more than thirty grams but less than one kilogram of spice at the time of his arrest.

¶19. At the close of the State's case-in-chief, Murshid moved for a directed verdict on all six counts in the indictment. Although the circuit court denied the motion at that time, it later granted the motion as to Count VI for the charge of conspiracy to sell spice. At the close of the parties' evidence, Murshid unsuccessfully renewed his directed verdict motion as to the five remaining counts.

9

¶20. After considering all the testimony and evidence, the jury found Murshid guilty of Counts I-V. For Count I, possession with intent to sell counterfeit goods, the circuit court sentenced Murshid to serve three years in MDOC's custody. For Count II, possession with intent to sell more than 30 grams but less than one kilogram of spice, the circuit court ordered Murshid to serve a consecutive five-year sentence in MDOC's custody and fined him $25,000. The circuit court also fined Murshid $5,000 for each of the charges in Counts III, IV, and V for possession with intent to sell recordings without the display of required information. Murshid unsuccessfully moved for a new trial. Aggrieved, he appeals.

## DISCUSSION

### I. Motion to Suppress

¶21. Murshid argues that the circuit court erroneously denied his motion to suppress the results of the search warrant executed at the Grey Cloud store. We apply a "'mixed standard of review' with respect to the denial of a motion to suppress under the Fourth Amendment." *Holloway v. State*, 282 So. 3d 537, 541 (¶13) (Miss. Ct. App. 2019) (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)). Although we review de novo any determinations for reasonable belief or probable cause, "we are bound by the trial judge's findings as to the underlying 'historical facts' unless those findings are 'clearly erroneous.'" *Id.* (quoting *Dies*, 926 So. 2d at 917 (¶20)).

¶22. As this Court has previously explained:

> The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free

10

from unreasonable searches and seizures. As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies. The State bears the burden to show that a warrantless search falls under one of the permissible exceptions. If no exception is found, the evidence seized as a result of the search should be suppressed as fruit of the poisonous tree. A search is not unreasonable when it is based on probable cause.

*Jones v. State*, 261 So. 3d 1131, 1139 (¶26) (Miss. Ct. App. 2018) (quoting *May v. State*, 222 So. 3d 1074, 1078 (¶¶7-8) (Miss. Ct. App. 2016)). Exceptions to the warrant requirement include consent to search, which is not limited to the property owner and can be given by a third party "if that party possesses 'common authority, mutual use, and joint control over property not in the exclusive control or possession of the defendant and where the defendant had no reasonable expectation of privacy.'" *Brown v. State*, 119 So. 3d 1079, 1081 (¶6) (Miss. Ct. App. 2013) (quoting *Brown v. State*, 358 So. 2d 1004, 1005 (Miss. 1978)).

¶23. On appeal, Murshid challenges the Grey Cloud employee's authority to consent to a search. Murshid claims that as the store's owner and operator, he was the only individual authorized to consent to a search or to give permission for the MBN agents to walk behind the counter. Because he neither consented nor gave his permission, Murshid asserts that the evidence seized from the Grey Cloud store resulted from an illegal search and should have been suppressed.

¶24. Although Murshid owned the Grey Cloud store, he was not present when the two MBN agents entered on July 9, 2015. The record evidence reflects that the employee behind the counter was the only individual present and was authorized during Murshid's absence to

11

continue operating the store unsupervised. As part of her duties, the employee possessed absolute authority to occupy the space behind the counter, to operate the cash register, and to sell the store's merchandise. The employee appeared to have unlimited and unrestricted access to, as well as complete control and dominion over, the area behind the counter. That area included the unlocked drawer in her immediate vicinity that contained the products labeled as incense.

¶25.    Based on such facts, we conclude that the Grey Cloud employee possessed sufficient "common authority, mutual use, and joint control over" the area behind the store counter to invite the agents to view the drawer's contents and to voluntarily consent to a search of that particular space. *See Brown*, 119 So. 3d at 1081 (¶6) (quoting *Brown*, 358 So. 2d at 1005). We therefore hold that no unreasonable search and seizure resulted when the two agents accepted the employee's invitation and walked behind the counter to view the contents of the open drawer. Accordingly, we find no error in the circuit court's denial of Murshid's motion to suppress the evidence seized from the Grey Cloud store.

### II.    Motion to Dismiss

¶26.    Murshid next contends that the two-year statute of limitations applicable to his indicted charges expired without the State ever prosecuting him. Miss. Code Ann. § 99-1-5 (Rev. 2020). He further asserts that his reindictment was both untimely and improper and that the circuit court therefore erred by denying his motion to dismiss the charges against him. "Because 'statutes of limitations are questions of law, we employ a de novo standard

12

of review with this issue.'" *Stevens v. State*, 294 So. 3d 699, 704 (¶16) (Miss. Ct. App. 2020) (quoting *Smoot v. State*, 780 So. 2d 660, 662 (¶6) (Miss. Ct. App. 2001)).

¶27.    "A prosecution may be commenced . . . by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit." Miss. Code Ann. § 99-1-7 (Rev. 2020); *see also* MRCrP 2.1(a) ("All criminal proceedings shall be commenced either by charging affidavit, indictment, or bill of information."). As this Court recently explained:

> While it is true that an indictment is required to prosecute one charged with a felony, our [caselaw] suggests and our statute mandates that the process of prosecution commences prior to indictment. This is true whether the prosecution involves a felony or a misdemeanor. Therefore, the issuance of an arrest warrant signals the commencement of prosecution.

*Stevens*, 294 So. 3d at 704 (¶17) (citations and internal quotation marks omitted).

¶28.    Here, the MBN agents executed the search warrants for Murshid's two convenience stores on July 9, 2015.[2] The agents also executed a warrant for Murshid's arrest on the same day, and a grand jury indicted Murshid just over one year later on July 28, 2016. Thus, the record clearly refutes Murshid's argument that the State failed to commence his prosecution within the time period provided by section 99-1-5.

¶29.    We further find no merit to Murshid's claim that his 2019 reindictment was untimely and therefore invalid. The May 29, 2019 indictment contained charges almost identical to

_____

[2] Murshid raises no challenge to the validity of the search warrant executed on the Meridian Tobacco store, and as previously discussed, we find no merit to his assertions regarding the invalidity of the search warrant executed on the Grey Cloud store.

13

those set forth in the 2016 indictment. The one exception involved Count II, which the State amended to reflect the specific amount of spice seized from Murshid's Meridian Tobacco store. Despite the passage of over three years since Murshid's arrest, the record clearly reflects that the prosecution of the indicted charges commenced during the applicable limitations period. *See Eason v. King*, No. 2:09cv116-KS-MTP, 2010 WL 3122789, at *4 (S.D. Miss. Mar. 25, 2010) (holding that under Mississippi caselaw, the prosecution for Count IV of the defendant's superseding indictment was timely commenced, even though the superseding indictment was issued over two years after the arrest warrant and the original indictment); *see also Stevens*, 294 So. 3d at 703 (¶¶6-8) (recognizing that the case against the defendant had remained stagnant for three years after the issuance of an arrest warrant but still finding no merit to the defendant's claim that section 99-1-5's two-year limitations period had expired). Thus, based on the record and applicable caselaw, we find this issue lacks merit.

### III. Motion for a Mistrial

¶30. During a pretrial hearing, Murshid moved to exclude testimony about (1) the 2013 dismissed charge for possession of synthetic cannabinoids and (2) a video that purportedly showed he was present while another person sold contraband. Following a hearing, the circuit court excluded some of the State's proffered evidence. In response to the State's request for clarification, the circuit court explained that its ruling did not exclude all testimony about Murshid's interview statements to law-enforcement officers but only the

evidence related to "the interrogation by the law[-]enforcement officers in which they . . . stated that they saw a videotape in which he [(Murshid)] was . . . present when there was an illegal sale."

¶31. At trial, the State asked Agent Creel what Murshid had told him during their interview. Agent Creel stated Murshid had informed him that Susan began operating the Meridian Tobacco store after the DEA arrested Murshid in 2013. Murshid's attorney immediately objected to Agent Creel's statement about the 2013 arrest. Although the circuit court sustained the defense's objection, it denied Murshid's motion for a mistrial. On appeal, Murshid contends that the circuit court erred by denying his mistrial motion after Agent Creel's reference to his 2013 arrest for an undisclosed charge.

¶32. We review the circuit court's denial of Murshid's mistrial motion for abuse of discretion. *Young v. State*, 281 So. 3d 179, 186 (¶29) (Miss. Ct. App. 2019). "A trial judge need declare a mistrial only when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Id.* (quoting *Hutto v. State*, 227 So. 3d 963, 984 (¶66) (Miss. 2017)). In discussing when to grant a mistrial, Mississippi Rule of Criminal Procedure 23.5 states the following:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by a party, a party's attorney(s), or someone acting at the behest of a party or a party's attorney(s), resulting in substantial and irreparable prejudice to the movant's case.
>
> Upon motion of a party or its own motion, the court may declare a mistrial if:

15

(a)     The trial cannot proceed in conformity with the law; or

(b)     It appears there is no reasonable probability of the jury's agreement upon a verdict.

¶33.     After our review, we find no abuse of discretion in the circuit court's denial of Murshid's motion for a mistrial. "[A] trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial." *Young v. State*, 264 So. 3d 797, 805 (¶19) (Miss. Ct. App. 2018) (quoting *Ford v. State*, 206 So. 3d 486, 491 (¶14) (Miss. 2016)). Our review of the record reflects no evidence that Agent Creel's single reference to Murshid's 2013 arrest substantially or irreparably prejudiced Murshid's case. The State never sought to elicit improper testimony from Agent Creel, and Murshid's attorney objected to the remark before Agent Creel revealed the nature of the prior charge. In addition, at the conclusion of Murshid's trial, the circuit court properly instructed the jurors that they should disregard any statements that were inadmissible and lacked a basis in the evidence. In relevant part, the circuit court instructed the jury as follows:

> The evidence which you are to consider consists of the testimony and statements of the witnesses and the exhibits offered and received.
>
> . . . .
>
> If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement[,] or remark.
>
> . . . .
>
> You are to disregard all evidence which was excluded by the court from

16

consideration during the course of the trial.

Thus, the record reflects that the circuit court properly instructed the jury to only consider admissible testimony with a basis in the evidence. Moreover, we presume that the jury follows the court's given instructions. *Williams v. State*, 288 So. 3d 412, 415 (¶12) (Miss. Ct. App. 2020). We therefore find that this issue lacks merit.

### IV. Motion for a Directed Verdict

¶34. In his final assignment of error, Murshid challenges the circuit court's denial of his motion for a directed verdict on Counts I-V of his indictment.

¶35. "Motions for a directed verdict . . . challenge the sufficiency of evidence presented at trial . . . ." *McNeer v. State*, 307 So. 3d 508, 517 (¶26) (Miss. Ct. App. 2020). We review questions regarding the sufficiency of the evidence de novo. *Id.* "This Court will reverse the denial of a directed verdict only where reasonable and fair-minded jurors could only find for the moving party." *Id.* (quoting *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018)). In assessing the sufficiency of the evidence, "[t]he reviewing court 'must accept as true all credible evidence consistent with guilt' and give the State 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.'" *Guss v. State*, 296 So. 3d 734, 737 (¶10) (Miss. Ct. App. 2020) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015)).

¶36. Because none of the seized contraband was found in Murshid's actual possession, the State had to prove that he constructively possessed the spice and counterfeit goods at issue.

"Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent." *Roney v. State*, 294 So. 3d 1268, 1272 (¶14) (Miss. Ct. App. 2020) (quoting *Williams v. State*, 971 So. 2d 581, 587 (¶16) (Miss. 2007)). "There must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular contraband and was intentionally and consciously in possession of it." *Adams v. State*, 228 So. 3d 832, 835 (¶8) (Miss. Ct. App. 2017) (quoting *Glidden v. State*, 74 So. 3d 342, 345-46 (¶12) (Miss. 2011)).

¶37.    The State can establish constructive possession "by showing that the contraband was under the dominion and control of the defendant." *Roney*, 294 So. 3d at 1272 (¶14) (quoting *Williams*, 971 So. 2d at 587 (¶16)). A presumption of constructive possession exists "[w]hen the defendant owns or controls the premises where the contraband is found . . . ." *Jordan v. State*, 158 So. 3d 348, 351 (¶8) (Miss. Ct. App. 2014) (emphasis omitted). "[I]f the defendant's possession of the premises is not exclusive, [however,] there must be additional incriminating circumstances tying him to the [contraband]." *Id.*

¶38.    No dispute exists that Murshid owned and operated the Grey Cloud store. In his appellate brief, Murshid states that he possessed sole ownership of the Grey Cloud store and that the store was incorporated under his name. As for the Meridian Tobacco store, Susan admitted that although she operated the store, Murshid actually owned the store and essentially controlled the "purse strings." Susan testified that Murshid stopped by the Meridian Tobacco store about twice a week to check in and that he paid the store's taxes,

18

bills, and rent. Susan further testified that she gave the proceeds from the Meridian Tobacco store to Murshid and that he gave her money from the sales at his other stores so she could buy merchandise for the Meridian Tobacco store.

¶39.    The jury also heard Agent Creel's testimony about his interview with Murshid. Agent Creel testified Murshid acknowledged that he knew Susan purchased incense to sell at the Meridian Tobacco store. Murshid even stated that he obtained some of the incense from Susan to then sell at the Grey Cloud store. In addition, Murshid told Agent Creel that he had the Florida seller of the incense test the product to ensure the Murshids could legally sell it in Mississippi. As for the counterfeit goods seized from both store locations, Investigator McDivitt testified that he observed counterfeit wallets and purses displayed in plain sight by the cash register and in the aisles at the Meridian Tobacco store. He further testified that he observed three counterfeit CDs and/or DVDs for sale in plain sight at the Grey Cloud store. When Investigator McDivitt questioned Murshid about the counterfeit purses and wallets, Murshid responded that he purchased the items from a business in Jackson.

¶40.    Upon review, we find the State presented evidence to show not only that Murshid exercised dominion and control over both the Meridian Tobacco and Grey Cloud stores but also that he possessed knowledge of the presence and character of the contraband sold at both locations. We therefore conclude the State provided ample evidence from which the jury could find that Murshid constructively possessed the contraband seized at both store locations.

19

### a.     Count I

¶41.    To prove Count I of Murshid's indictment, the State had to establish that (1) Murshid knowingly possessed counterfeit goods at the Meridian Tobacco store, (2) he intended to sell the counterfeit goods, and (3) if neither forged nor counterfeited, the goods had an aggregate retail value of $1,000 or more.  Miss. Code Ann. § 97-21-57(1)(a) (Rev. 2020).

¶42.    As discussed, we find the State presented sufficient evidence from which a reasonable jury could find that Murshid constructively possessed the counterfeit purses and wallets seized from the Meridian Tobacco store.  As for the remaining two elements, Investigator McDivitt testified that several of the counterfeit items were clearly displayed for sale in the store and that one item was even located in a clear case next to the cash register.  In addition, Investigator McDivitt testified that the aggregate retail value of the purses and wallets, if not forged or counterfeited, amounted to about $5,426.  Viewing the evidence in the light most favorable to the State, we conclude the State presented enough evidence from which rational and fair-minded jurors could have found beyond a reasonable doubt that Murshid was guilty of possession of counterfeit goods with the intent to sell.  We therefore find no error in the circuit court's denial of Murshid's directed verdict motion as to Count I.

### b.     Count II

¶43.    After being amended to conform with the proof presented at trial, Count II of Murshid's indictment charged that he possessed with the intent to sell more than thirty grams but less than one kilogram of spice.  Miss. Code Ann. § 41-29-139 (Supp. 2015).  To prove

20

Count II, the State was required to demonstrate that (1) Murshid knowingly possessed spice, (2) the weight of the spice amounted to more than thirty grams but less than one kilogram, and (3) Murshid intended to sell the spice. *Id.*

¶44. The record reflects the State presented evidence from which a reasonable juror could find that Murshid constructively possessed the drug-related contraband seized at both the Meridian Tobacco and the Grey Cloud stores. The State also proved that the seized contraband contained spice, a controlled substance, and that the total net weight of the spice amounted to 650.08 grams—536.08 grams from the Meridian Tobacco store and 114 grams from the Grey Cloud store. The jury also heard ample testimony that both the Meridian Tobacco store and the Grey Cloud store sold spice under the label of incense. From the trial evidence presented, reasonable jurors could have concluded that Murshid was guilty of possessing more than thirty grams but less than one kilogram of spice with the intent to sell. We therefore find no error in the circuit court's denial of Murshid's directed verdict motion as to Count II.

### c. Counts III-V

¶45. Counts III, IV, and V of Murshid's indictment charged him with possession with intent to sell recordings that lacked the display of required information. Miss. Code Ann. 97-23-89(2)(c) (Rev. 2020). Investigator McDivitt testified that when he entered the Grey Cloud store, he observed in plain sight several CDs and/or DVDs for sale. In addition to noticeable issues associated with the recordings' packaging and artwork, Investigator McDivitt

explained that he identified the recordings as counterfeit because they failed to display the manufacturer's actual name and street address as required by section 97-23-89(2)(c). Based on Investigator McDivitt's testimony, reasonable jurors could have found Murshid guilty of possessing with the intent to sell recordings that lacked the display of required information. We therefore find no error in the circuit court's denial of Murshid's directed verdict motion with regard to each of the three charges contained in Counts III, IV, and V of his indictment.

## CONCLUSION

¶46.     Because we find no error, we affirm Murshid's convictions and sentences.

¶47.     **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**